COUSINEAU *v.* MUSKEGON TRACTION & LIGHTING CO.

1. CARRIERS—STREET RAILROADS—PERSONAL INJURIES—CROWD AT STATION—CONTRIBUTORY NEGLIGENCE.

   Where a street-railway company carries a crowd of several thousand people to an amusement park owned by it, a passenger at the park cannot be said to be guilty of contributory negligence, as a matter of law, in taking a position in the front rank of the crowd in the effort to secure a seat in a car going towards her home after the close of the performance, precluding her recovery for an injury sustained by being forced under the car by the crowd in the rush for seats.

2. SAME—NEGLIGENCE.

   Whether a street-railway company was negligent in not providing employés and other means sufficient to direct and control a crowd which it had invited and carried to an amusement park owned and controlled by it, so as to be liable to a passenger crowded under a car and injured in an effort to secure passage home after the close of the performance at the park, *held*, a question for the jury.

Error to Muskegon; Russell, J. Submitted May 8, 1906. (Docket No. 51.) Decided July 23, 1906.

Case by Netiva Cousineau, by next friend, against the Muskegon Traction & Lighting Company for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*James E. Sullivan*, for appellant.

*Nims, Hoyt, Erwin, Sessions & Vanderwerp*, for appellee.

MOORE, J. The plaintiff sued the defendant to recover for injuries done her by one of the cars of defendant company. The circuit judge was of the opinion she did not make a case, and directed a verdict for defendant. Coun-

sel for defendant is quite right in saying precedents on
this subject are not plentiful, and it is difficult to find a
case strictly parallel.   Before taking up the legal ques-
tions, an understanding of the facts from the standpoint
of the plaintiff is important.   The defendant not only
operates a line of street railway, but it is the owner of an
amusement park containing a number of acres, upon the
shore of Lake Michigan, with a grove, picnic tables,
dancing pavilion, candy stand, theater, and a fine beach.
It runs many of its cars into this park and around a loop.
At one side of the loop there is a platform about 50 feet
square.   The planking of the platform at its beginning
lies directly upon the sand, and gradually the surface is
raised until it is about even with the running board of the
cars.   As a rule the cars stop opposite the platform, and
the passengers step from the platform into the cars.
There was no barrier along the track or around this plat-
form, but it could be reached from all sides.   Sometimes
the cars coming from the city stop before reaching it.
There was a sandy stretch of ground at the side of the
track all the way up to the platform.   On the 4th of July
the plaintiff, a girl about 16 years old, and a girl compan-
ion, took a car in the city and went out to the park.   The
cars were crowded when they went, and continued to be
crowded all day long, and after 5 o'clock there never
was a time when there were not more people to take the
cars going to the city from the park than the motor car
and trailer attached to it could carry.   After the theater
was over, and soon after 10 o'clock, the girls concluded to
take a car back to the city, and repaired to near the place
where the cars stopped for that purpose.

It is the claim of plaintiff that between the dance pa-
vilion, theater, and the street-car track there were be-
tween 7,000 and 8,000 people, and when the plaintiff and
her companion came to the platform there was such a
crowd that it extended off the platform into the sand, and
was so dense on the platform they could not get on it.
The plaintiff stood about three feet west of the platform;

her friend was nearer the platform, and both were about six feet from the track. The plaintiff with her right hand had hold of her friend's left arm, and the crowd was on all sides of her, except towards the street-car tracks. The two girls took their places just after a street-car train had left, and remained standing until the next train came, about 10 or 15 minutes later, expecting to get on the next car if they could secure seats therein. Plaintiff had paid her fare to the park in the morning on coming down, and expected to pay her fare on the car going back, as was usual. A train of two cars would carry about 160 people. The crowd was a good natured one; but every one apparently desired to get on the first car going away from the park. Plaintiff says she saw but one policeman and he was at the farther end of the platform. When the motor car and trailer appeared, it is claimed the crowd made a rush for them before they stopped, though the motorman and conductor warned them not to get on until the cars stopped. No heed was paid to this warning by the crowd. The plaintiff and her companion were thrown down; the plaintiff going between the motor car and trailer, and receiving injuries for which this action is brought.

Two questions are presented: *First.* Was the company negligent in not making adequate provision by the way of railings, barriers, and policemen to protect the persons who had accepted the invitation to come to the amusement park, against the dangers incident to such a great crowd? And, *second,* was the plaintiff guilty of such contributory negligence that she cannot recover? We take up these propositions in the inverse order. We quote from brief of counsel for defendant:

" One contention of the defendant is that when the plaintiff voluntarily joined the crowd near the platform, edging her way through it to the front ranks near the track, knowing the extent of the crowd, the facilities of the defendant to transport them, the open condition of the track, and the expected approach and frequent passage of

cars thereon; she assumed all risks involved in the taking of such position. We here use the term 'assumed risk' in its broad and general sense, and not in its contractual sense, as applied in the law of master and servant. It is also insisted on defendant's part that such conduct of the plaintiff constituted contributory negligence precluding her recovery. * * *

"The plaintiff was not a stranger to the situation at the park. She knew what to expect there. She had lived in Muskegon all her life, and had visited the park very frequently. During the season she had been there once or twice a week. She was thoroughly familiar with the park and the conditions, including the occasional presence of large crowds; and, of course, knew of the absence of any railings or barrier around the platform and along the track. Plaintiff knew that the cars did not usually stop where she stood, but only opposite the platform. She knew the chances for getting aboard the cars were very remote, but says she and her companion were waiting to see whether there was any room for them. * * *

"It was and is the claim of the defendant that, under the circumstances disclosed, the conduct of the plaintiff, in making her way through the throng of people and taking a position in the front rank near the track, off the platform, in loose sand ankle deep, was negligence contributing to her injury."

No authorities directly in point are cited in support of this proposition. It should be borne in mind that this amusement park was several miles from the homes of the people who were in attendance there. It was not owned by the public, but was under the entire control of the defendant. The people who were there came as patrons of the company, and by its invitation, and for its profit. The crowd was made up of individuals. Before it could get smaller some of them must go away. Most of them must go by the same means which brought them. Were all of the first to go guilty of contributory negligence, and only the late goers free from it? No one knew better than defendant the number of persons it had brought to the park. In taking them there it was a fair implication it would afford them reasonably safe guards from danger

while on its ground, and reasonable facilities for returning home. No individual could get upon a car without getting into the vicinity of where it stopped. There is no testimony indicating that plaintiff attempted to board a moving car. Her testimony is that she did not. We do not think it can be said, as a matter of law, that because of what these girls did, they are guilty of contributory negligence. At most, it would present a question for the jury.

To return to the first question, Was defendant guilty of negligence? It knew what its facilities were for taking care of a crowd. It knew its facilities for handling them. It invited the people who constituted the crowd to come. In the exercise of ordinary care it would know, and doubtless did know, approximately the size of the crowd. It also knew that many of its members would be eager to return home after a period of time had elapsed. The precise point involved here, so far as we know, has not been decided, but there are authorities which afford some light in relation to the principle involved. In *Brezee* v. *Powers*, 80 Mich. 172, Justice Long, speaking for the court, quoted with approval the following language from 2 Cooley on Torts (3d Ed.), p. 1258:

"It has been stated on a preceding page that one is under no obligation to keep his premises in a safe condition for the visits of trespassers. On the other hand when he expressly, or by implication, invites others to come upon his premises, whether for business, or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger; and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

And added:

"This rule is the doctrine of all the courts, and I know of no rule to the contrary." Citing a large number of cases.

In *Sheldon* v. *Railroad Co.*, 59 Mich. 172, a boy who was on a railroad platform listening to a band of music,

was, because of the inconsiderate action of the crowd which had been attracted by the music, pushed in front of a backing train and killed. It was held that whether the degree of care exercised was commensurate with the duty imposed presented a question of fact peculiarly within the province of the jury. The case of *Taylor* v. *Pennsylvania Co.*, 50 Fed. 755, is very suggestive: The suit was for damages sustained by the plaintiff in the Union Depot in Pittsburgh, while she was about to pass out of one of the exit gates through which the passengers were required to go to reach the cars. The depot was under the control of the defendant company. There was a large crowd gathered in Pittsburgh to attend a celebration. She waited in a large vestibule at the depot to take the cars from the depot home, and the crowd packed in around and behind her. One of the gates opening from the vestibule where she was waiting was opened for passengers to take the cars, and the crowd began to move, and she moved with it. When she reached an iron railing, constructed to turn people to the narrow exit of the gateway, she was, by a sudden surging of the throng, forced and jammed against the railing and injured; and the case having been submitted to the jury, a verdict was returned for the plaintiff. The court in disposing of the case used the following language:

" Did the defendant exercise ordinary care in providing a suitable force of officers and employés to properly control and direct the movement of the unprecedented throng which it was advised would crowd through its depot rooms, vestibules, corridors, and gates to reach its trains ? * * *

" The only remaining question, therefore, is, Did the defendant exercise ordinary care in providing a suitable force to properly control and direct the movements of the unprecedented crowd then in its custody ? The evidence offered by the defendant was that it made application to the chief of police of Pittsburgh for an extra force of patrolmen, and got all it wanted, and that at the time of the accident it had from 20 to 40 policemen, and, with its own employés, had about 100 men in and about the depot

to direct and control the crowd in its approach to the depot, while in the depot, and while going to the trains."

The jury were instructed:

" A passenger while in actual progress on his journey is necessarily exposed to innumerable hazards; is wholly under the care of the carrier; and, in view of these dangers, which he can in no respect control, the law imposes upon such carrier the greatest possible vigilance as to the passenger's safety and holds it responsible for the slightest negligence. This degree of care is fixed not solely because of the relation of carrier and passenger; it is measured by the consequences which may follow the want of care. A carrier is held to this highest degree of care as to the condition of its engines, cars, roadway, bridges, and other appliances, because negligence as to any of them involves extreme peril to passengers, against which they cannot protect themselves. But a rule properly ceases with the reason for it. Therefore, as a passenger's detention at a station, or his exit to his train, is not attended with the hazards pertaining to the journey on the cars, running at a rapid rate of speed, the degree of care above defined is justly lessened to the extent that in such a place, and at such a time, the carrier is bound to exercise only a reasonable degree of care for the protection of its passengers. This reasonable and ordinary care depends largely upon the circumstances of each particular case, and is such care as a person of reasonable and ordinary prudence and skill would usually exercise under the same or similar circumstances. * * * The witnesses for the plaintiff characterized the crowd as orderly and jolly. * * * As I have stated, the defendant could not be held to that degree of diligence, that called for a guard for every passenger. It was not bound to provide a policeman for each person, to protect and defend him or her from violence of fellow passengers, but it was bound to furnish a suitable number of its own officers or police to properly control, as a body, such a crowd of passengers to the extent already stated. If you find it did this, then it discharged its duty to the plaintiff, and cannot be held liable for this injury."

The court said:

" These instructions correctly state the law as applicable to the case. The degree of care to which the defendant

was held in its relation and duty to the plaintiff at the time of the accident was just. * * * They had the right to suppose that the precautions to be taken for their safety and protection would be commensurate with the increased dangers confronting them. Of these increased dangers, the defendant had the first and most trustworthy warning. * * * The crowd immediately surrounding the gates, waiting to be passed through, was permitted to become too dense for proper control or safe exit. The police and guards, as they were stationed, were unable to keep the crowd back. Whether, because they were not stationed at the most suitable places, or because they were not active and energetic enough, is not for me now to determine. The jury found want of ordinary care in some of these respects, and I am not justified in saying such a conclusion is not supported by sufficient evidence. * * * If the carrier which has solicited the 10,000 passengers to travel over its road cannot give to them this proper measure of care, and an injury thereby follows, it is responsible. It cannot invite and undertake to transport more passengers than its capacity justifies, and then excuse itself by claiming an unprecedented crowd, and that ordinary care as to the passengers in its depot was used."

In *Illinois Cent. R. Co.* v. *Treat*, 75 Ill. App. 327, a person who had purchased a ticket passed through a turnstile to the platform and was hurt, and it was said, in substance, in deciding the case:

" A railroad company is bound to use reasonable care in providing for the safety and protection of its passengers while in its inclosures, and while being conducted to its trains, with due regard to the number and character of those on its premises, and with due reference to the risks to which they are exposed; and this duty may require it to provide a suitable number of men to properly control a crowd and to protect its passengers from the dangers incident thereto."

The case of *McGearty* v. *Railway Co.*, 15 App. Div. (N. Y.) 2, was an action to recover damages for personal injuries sustained by the plaintiff, occasioned by his being crowded from the platform by the passengers assembled at the defendant's elevated station at Grand street, in the

city of New York, which caused the plaintiff to fall into the street below.   The court said:

"It may be conceded that defendant's elevated station at Grand street is properly constructed, and is sufficient in extent to answer all of the ordinary requirements for which it is used, and accommodate the passengers who assemble there for the purpose of boarding the defendant's trains, but the theory upon which the case was tried and submitted to the jury, and upon which the negligence of the defendant was predicated, did not necessarily involve this question.   The negligence of the defendant was based, not upon any infirmity in the structure, as a structure, but upon the character of its use at the particular time.   It was sufficient to accommodate ordinary traffic, for, so fast as the platform filled with passengers, they were removed by the trains which stopped at the station for that purpose at frequent intervals.   It is easy to see that, as there was a constant accumulation of passengers upon the platform, unless they were removed by the trains, the platform of the station would become overcrowded, and that such overcrowding might render the place unsafe.   That was shown to be the condition in this case.   The trains did not remove the passengers as fast as they accumulated, and the defendant continued to sell tickets and admit passengers to the platform.   When the plaintiff entered upon the platform, it was a safe place, and he had the right to assume that no part of it would be rendered unsafe by any act of the defendant.   The obligation imposed upon the defendant was to take reasonable care in securing the safety of the passenger while upon its premises, and to see that he was exposed to no unnecessary danger while there. The defendant must be assumed to have known the capacity of its platform, and when it had admitted passengers to the extent of such capacity, if when having done this the passengers were not removed by its trains, it became its duty to permit no more to enter.   It had no more right to accumulate a crowd at the rear, which, pressing forward, would precipitate those at the edge of the platform into the street, than it would have the right to go upon the platform and push them off by physical force."

See, also, *Dawson* v. *Brooklyn Bridge*, 31 App. Div. (N. Y.) 537; *Lehr* v. *Railroad Co.*, 118 N. Y. 556.

The reasoning of these authorities seems to be without

flaw, and, applied to the facts of this case, would require both questions discussed herein to be submitted to the jury.

Judgment is reversed, and new trial ordered.

Carpenter, C. J., and McAlvay, Blair, and.Hook-er, JJ., concurred.