## KALIS *v.* DETROIT UNITED RAILWAY.

1. CARRIERS — STREET RAILROADS — PERSONAL INJURIES — NEGLI-
GENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

In an action for negligently causing the death of plaintiff's
son, there was evidence that the boy boarded a heavily
loaded open car and took a position on the inside running
board; that later other passengers were permitted to board
the car, thereby crowding him into a position of danger; that,
on passing another car going in the opposite direction on a
parallel track, he was struck and instantly killed; and that
the gong on the passing car was not sounded.  *Held,* that the
questions of defendant's negligence and the contributory
negligence of plaintiff's decedent were properly submitted to
the jury.[1]  HOOKER, J., dissenting.

2. DEATH—DAMAGES—INFANT—EXCESSIVE VERDICT.

Where, in an action by a parent for the death of a boy 15½
years of age, the recovery was limited to the present worth of
what he would have earned above his living expenses during
his minority, a verdict for the exact amount he would have
thus earned, based on what he was earning at the time of his
death, will not be set aside as excessive, on the ground that
the jury disregarded the instructions of the court in respect
to determining the present worth of such damages; since it
is a fair inference that as he became older and stronger and
more proficient in his work his earning capacity would be in-
creased.

3. CARRIERS—STREET RAILROADS—INSTRUCTIONS.

In such action, after the testimony was closed and before the
arguments were begun, the trial judge stated that the only
question he would submit to the jury was whether plaintiff's
decedent was forced into the position which he occupied at

[1]As to duty of carrier to passengers forced on to platform by
crowded condition of car, see note to *Lynn* v. *Southern Pacific Co.*
(Cal.), 24 L. R. A. 710.

As to negligence of passenger in riding on platform of street car,
see note to *Capital Traction Co.* v. *Brown* (App. D. C.), 12 L. R. A.
(N. S.) 831.

As to negligence in riding on running board of street car, see
notes to *Burns* v. *Johnstown Pass. R. Co.* (Pa.), 2 L. R. A. (N. S.)
1191, and *Harding* v. *Philadelphia Rapid Transit Co.* (Pa.), 10 L.
R. A. (N. S.) 352.

the time of the accident by the crowding of passengers who came upon the car after he boarded it, or whether he voluntarily assumed such position. The arguments were based upon such theory. In the charge, after submitting this theory, the jury were instructed that it was a question for them to decide whether or not the failure to ring the bell of an approaching car, if they should find it was not rung, was an act of negligence. *Held*, that, in view of the statement made before the arguments, the instructions given were not consistent with the statement made to counsel.

Error to Wayne; Brooke, J. Submitted October 13, 1908. (Docket No. 53.) Decided March 3, 1909.

Case by Mary Kalis, administratrix of the estate of Walter Kalis, deceased, against the Detroit United Railway for the negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defendant brings error. Reversed.

*Brennan, Donnelly & Van De Mark*, for appellant.

*Clarence P. Milligan*, for appellee.

MOORE, J. The trial judge in his charge to the jury so nearly covered the questions of fact and law involved in this proceeding that we quote from it as follows:

" "Gentlemen of the jury, in this case, Mary Kalis, as administratrix of the estate of Walter Kalis, deceased, brings suit against the Detroit United Railway, and this suit is brought for the purpose of obtaining damages, resulting to the estate of this boy through his alleged unlawful killing by the defendant. The accident occurred in September, 1906. It appears beyond dispute that this boy on that night, about a quarter to 6, boarded a Baker street car at the corner of Monroe avenue and Woodward in front of the Bagley bust. It appears beyond dispute that the car was full. It was an open car, with a running board on each side. It is not disputed that at the time the plaintiff boarded the car, at least the plaintiff's deceased, that all the seats were filled. The back platform was filled. The outside running board was filled, but that he secured a place upon the inside

running board. There is no doubt about that fact. The car proceeded upon its way up Monroe avenue until it came to Farmer street, where it was obliged to stop because another street car crosses there. It was what is known as a compulsory stop. There is some testimony tending to show that at that point other passengers boarded the car. After that stop, the car proceeded upon its way out Monroe avenue, and when at the corner of Farrar street, or near that point, a Brush street car, on its way towards the city hall, passed the car upon which the dead boy was riding. As it passed him, it struck him, striking his head and shoulders, knocking him to the ground, and killing him almost instantly. It is not disputed that this boy at the time of his death was 15 years and 6 months old. That he was engaged in the manufacturing business in the Detroit Screw Works, I think, and was earning at the time of his death $10 per week or slightly more, on an average about $10 a week, I think the testimony shows. It is not disputed that it cost for his maintenance, board, and clothes $3 a week. So that his estate through his death is the worse off, practically by the amount of the difference between $10 a week and $3 a week, or about $7 a week, if you believe the testimony.

"It is the plaintiff's claim that this boy came to his death through the negligence of the defendant company, and not through any negligence of his own. If the plaintiff can substantiate that claim, she is entitled to recover a verdict at your hands. I charge you, in the first place, that it was not negligence for this dead boy to take a position upon the running board, if at the time he got upon the car there was sufficient room for him to get upon the board and maintain an upright position next to the car. The running board is something like $18\frac{1}{2}$ inches—from the outside edge of the running board to the nearest point of the Brush street car was $18\frac{1}{2}$ inches, so that standing next to the stanchion there would be at least two feet between the stanchion of the open car and the nearest point of the Brush street car, a space ample for any man to stand in safety, if the cars were operated in an ordinarily careful and prudent manner. Therefore it would not be negligence for this boy to take position upon the running board; neither would it be negligence, on the part of this defendant company, to permit him to take a place upon the running board. People have ridden upon the inside and outside running boards of these cars for years. There is no

question that the company permits passengers to ride there, and there is no question that passengers habitually, when the cars are otherwise crowded, take their position upon those boards rather than wait for another car. So I charge you there was no negligence either in the company permitting him to stand there nor in his taking the position, if at the time he took the position there was room for him to get his feet upon the platform and maintain an upright position, standing upon the steps; because if he had that opportunity, and could have maintained that position, then it was a place, while dangerous, yet with the exercise of care upon his part, and due operation of the cars on the part of the defendant, would have been safe. It is the plaintiff's claim that after this boy boarded the car in front of the Bagley bust, and at the stop made at Farmer street, others were permitted by the defendant company to board the car, particularly upon this running board upon which he stood, to such numbers that thereafter he was by other persons crowded out from the body of the car into a position which brought his body or some portion of it where an oncoming Brush street car came and did strike him; and it is urged by the plaintiff that it was an act of negligence on the part of the defendant company, after the inside running board was so loaded with passengers, including the plaintiff's deceased, to permit others to get upon that running board and crowd the plaintiff's deceased out and into a place of danger. I charge you, gentlemen of the jury, if you find that to be a fact, it would be an act of negligence on the part of defendant company. While it is not negligence for them to permit people to stand upon the running boards of their cars, I charge you it would be a negligent act for them to permit the running board to be so crowded as to allow oncoming passengers to push those, who had a proper place upon the platform, into a place of danger; and that would be a question of fact for your determination. I charge you that it was this dead boy's duty, if the running board was so crowded at the time he boarded it, that he could not get his feet upon it and maintain himself in an upright posture—it was his duty to have stayed off the car and waited for the next one. He would be guilty of an act of negligence, which would preclude him from recovery, if when he went to the side of the car he found all the space on the running board filled, and he could only secure a ride by reaching around somebody

else who had a safe place on board; and, if you find he did that, the mother, as his administratrix, cannot recover. I charge you further, if you find that this young lad, either through carelessness, lack of attention, or desire to see his companion in front, or for any other reason, voluntarily or involuntarily, or without knowing it, having secured a place of comparative safety, where he could remain upright and escape injury, if he allowed himself to hang out, and was not crowded out by subsequently arriving passengers, his mother cannot recover because that would be such an act of negligence as would preclude his recovery. In other words, gentlemen of the jury, while a passenger has a right to assume a place upon the inside running board of an open car, it imposes upon that passenger the additional duty to maintain himself in safety, and he has got to use such care as would save him from injury, so long as the company is not negligent in its operation of the car.

"There is no testimony in this case that the tracks were in an extraordinary condition, or that the cars were operated in an unusual manner. There is testimony that no bells were rung on either car. I am not prepared to charge you whether that would be an act of negligence or not. The company is bound to exercise due care in the operation of its cars, and it is for you to determine whether the Brush street car approaching, as it did, heavily loaded, the Baker car, passengers standing on the inside, whether the failure to ring a bell, if you find that defendant company did fail to ring a bell on the Brush street car, upon its approach, would be an act of negligence or not. I know of no rule which absolutely commands such action on the part of the railroad company, but there is a common-law liability upon the defendant, as a common carrier, to operate its cars with due regard for life and limb, not only of those who are passengers upon it, but those who pass in the street; and, if you find that the bell on the approaching Brush street car was not rung, and that that was the approximate cause of this boy's injury, I charge you that you are at liberty to determine whether or not, in your opinion, that would constitute an act of negligence upon the part of the defendant company. In other words, it is a question for your determination as to that feature. The plaintiff is obliged to sustain the burden of proof in this case. By that I mean to say the plaintiff must produce testimony on disputed

questions of fact, which in your mind outweighs the testimony which has been produced on behalf of the defendant as to those disputed questions of fact. If she has done so, she can recover a verdict at your hands. If she has not done so, she cannot. In determining whether or not the plaintiff has sustained the burden of proof, it is proper for you to consider the interest or lack of interest of the witnesses who have been sworn before you, and determine the value that you should give to their testimony. Now, gentlemen, if, applying the rules I have laid down to the testimony you have heard, you should conclude the plaintiff has proven by fair preponderance of the evidence that the deceased came to his death through no negligence of his own, but through the negligent act of this defendant company, under the instructions I have given you, you will then reach the question of damages, and not until then. If you do reach the question of damages, gentlemen, I charge you that the measure of damages is the value of this boy's life to his estate from the time of his death to the time he was 21 years of age. Now that does not mean, gentlemen of the jury, that if he earned $100 a year, we will say, over and above what it cost to keep him for the $5\frac{1}{2}$ years, that would cover the period of your examination, that you would therefore bring in a verdict for $550, because it is only the present value of his earnings that you are entitled to give him as your verdict. In other words, if the estate would be entitled to $100 a year from today, it would obviously be improper to give $100 today. It would be such a sum as, invested at 5 per cent., would make the $100 from today, and the second year the same, and the third year the same. It is the present value of whatever you find his annual net earnings to be that you will return as your verdict, if you find the plaintiff entitled to recover. Now, gentlemen of the jury, because this plaintiff is the mother of a lad who has been killed unfortunately, and because the defendant is a public service corporation of reputed wealth, are themselves no reason why a verdict should be rendered for the plaintiff in this case. Neither sympathy for these bereaved parents, sorrow for the death of this lad, nor prejudice against this defendant company should have or can have anything to do with your deliberations in this case. You must approach the consideration of the disputed question wholly free from either of those feelings, intent upon weighing the testimony fairly with an

earnest desire to reach the exact truth, and determination to do justice after you have learned what that truth is. You will take this case, gentlemen, and consider it fairly, and endeavor to return a fair and honest verdict.

"*Mr. Milligan:* I would like to have the court instruct the jury as to the duty and care, with reference to passengers, and in reference to the roadbed, and in reference to the operation of cars in general. I also think the court stated there was no evidence as to the condition of the track. I think there were two witnesses who testified on that subject.

"*The Court:* No, I have the testimony, and I do not think it is worthy to be considered, Mr. Milligan.

"*Mr. Donnelly:* If the court please, I think that it should be made clear to the jury, before they leave the court-room, that the plaintiff cannot go to the jury upon two inconsistent theories. The defendant is only required to meet one theory. The testimony has been such that the issue is all confused in this case.

"*Mr. Milligan:* I think I will object to this line of talk at this time.

"*Mr. Donnelly:* Take your objection, and I will go on. The point I would like to make is, I think the jury should be instructed that unless they believe that extra persons did board the left-hand running board at Farmer street, and did thereby force the plaintiff out from the side of the car, and that he was not able to get back to the side of the car, unless that happened, and they believed it happened. there can be no recovery.

"*The Court:* Unless they should find that the failure to ring the bell, if it was not rung, was an act of negligence? That I have already given them, as plainly as I can.

"*Mr. Donnelly:* If that is your theory, I did not understand you yesterday. If, as a matter of fact, a man was against the side of the car, I do not see how the ringing of the bell would have anything to do with it, if he was not forced out. It would be contributory negligence surely.

"*The Court:* I think I will let the instructions stand. You may both have an exception. Follow an officer, gentlemen."

The jury thereupon retired to consider their verdict, and brought in a verdict in favor of the plaintiff in the

sum of $2,002, upon which judgment was entered on the
4th day of May, 1908.    Afterwards a motion was made
for a new trial based principally upon the claim that the
court erred in its instructions to the jury.    In overruling
this motion the judge said:

"I have carefully gone over the charge to the jury,
and, while it is not as clear as I think it should have been,
I have reached the conclusion that, taken as a whole, the
jury could not be misled by it."

In addition to the foregoing, the following should ap-
pear.   After the testimony was all in the following oc-
curred:

"Jury excused while motion to direct verdict for de-
fendant is heard.

"*Mr. Donnelly:* Your honor, it appears from the testi-
mony in this case that the plaintiff got on the car at the
Campus, and that the car was crowded at that time.
Now, that is the claim of the plaintiff, that the car was
crowded at that time; that it was not possible to get on
the running board and stand in the usual, ordinary way
against the side of the car; and that, if he were to get on
at all, it was necessary to get on, and hang on like a burr,
and project out from the side of the car.   To get on a car
under circumstances of that kind, and put himself into
that position would be so negligent, if the court please,
there can be no question but what, if a person should do
that, and then be injured, they would have no right to
recover.

"*The Court* (after discussion): I will ask you to stipu-
late upon the record, if upon a motion for a new trial I
should conclude that I should direct a verdict at this time,
I may do so.

"*Mr. Milligan:* All right, sir.

"*The Court:* In the event that you succeed in obtain-
ing a verdict, I will submit this case to the jury simply
upon this question:   If this boy at the time he was struck,
voluntarily, for any reason known to himself, assumed
the position which caused his injury, he cannot recover.
If he was forced into that position through the overpres-
sure of passengers permitted upon the car, I will charge
the jury for the purposes of this case that that would be
negligence on the part of the defendant company, and

would entitle him to recover. That is the only question in the case."

Counsel were told to proceed with the argument, and that they would be given thirty minutes on a side.

Counsel group the errors relied upon by appellant, as follows:

"(1) It was error for the court to instruct the jury that if they believed that defendant's employés permitted other passengers to board the car at Farmer street, particularly the left-hand running board, in such numbers that the deceased was crowded out from the body of the car, that they might find that this was negligence on the part of the defendant.

"(2) It was error for the court to instruct the jury in effect that even if the deceased was not forced out from the side of the car by the crowd, but voluntarily leaned out from the side of the car, that they might nevertheless still find in favor of the plaintiff, if they believed that the bell on the Brush street car was not rung, and that it was negligence on the part of the defendant's employés not to ring it.

"(3) It was error for the court not to charge that it would be negligence for a passenger upon an open car, and particularly the deceased, to remain upon the inside running board, if in order to do so it was necessary to reach past other persons upon the running board and hang on, projecting out from the side of the car at arms' length.

"(4) It was error for the court to instruct the jury that if they believed that the bell on the Brush street car was not rung, and that this was negligence, that they might find a verdict in favor of the plaintiff after counsel for the defendant had argued the case to the jury, relying upon the statement of the court to counsel that the only question in the case which would be submitted to the jury was whether the deceased was forced into the position in which he was at the time he was struck through the overpressure of passengers permitted upon the car, or whether he, of his own volition, assumed such position.

"(5) The verdict of the jury for $2,002 was excessive, and the jury did not follow the instruction of the court to make deduction from the amount to be awarded for present value."

As to the first three groups of assignments of error, we

do not deem it necessary to discuss them at length. It is insisted the court was in error in assuming that the defendant's employés were able to prevent persons boarding the car at Farmer street, and in the further assumption that they knew that such persons had boarded the car. There was a conflict in the testimony as to the number of passengers, and where they came upon the car, the effect upon the decedent, and what he did. There was testimony tending to show the theory of plaintiff as to how the accident happened, and what caused it to be true. The conductor had charge of the car. It was his duty to know who boarded the car. His testimony indicates that he did know and that he intended to collect fares of those on the inside running board, including the boy, as soon as he reached them in the collection of fares. As to the above assignments of error, we think they are not well taken, and that the charge of the court under the facts disclosed by the record is justified by the following authorities. *Saltzman* v. *Railroad Co.*, 73 Hun (N. Y.), 567; *Lehr* v. *Railroad Co.*, 118 N. Y. 556; *Geitz* v. *Railway Co.*, 72 Wis. 307; *Reem* v. *Railway Co.*, 77 Minn. 503; *Germantown Passenger R. Co.* v. *Walling*, 97 Pa. 55; *Pray* v. *Railway Co.*, 44 Neb. 167; *McGearty* v. *Railway Co.*, 15 App. Div. (N. Y.) 2; *Cousineau* v. *Lighting Co.*, 145 Mich. 314.

As to the verdict being excessive, it is not claimed the judge erred in his charge to the jury, but it is said the jury disregarded the instructions. The record discloses that the boy was 15½ years old at the time of his death, that he earned $10 and upwards a week, while his expenses of living were $3 a week. It is a fair inference that from time to time as he got older and stronger and more proficient in his work his earning capacity would be increased. Under the facts disclosed by the record, we do not think we would be justified in setting aside the verdict upon the ground that it was excessive. See *McDonald* v. *Steel Co.*, 140 Mich. 401.

The fourth assignment of error is more troublesome.

Before the arguments of counsel were made, the judge had given them to understand that the only question he would submit to the jury was whether the boy was forced into the position in which he was at the time he was hurt by reason of the pressure of passengers who came upon the car after the boy boarded it, or whether he of his own volition assumed such position. Counsel were then directed to proceed with the argument, and were given 30 minutes on a side. In the early part of his charge the judge instructed the jury in accordance with his suggestion to counsel. It is insisted that the latter part of his charge is not consistent with that position, and that the jury were given to understand that, if they believed the bell on the Brush street car was not rung, it would be such negligence as to justify a verdict for plaintiff. Counsel insist that because of what was said by the judge they were misled, and had no opportunity to present their views to the jury upon the question of whether the bell was rung, a disputed point in the case, or what the effect was if it was not rung. This contention of counsel impresses us as being well taken. We think the instructions of the judge to which we have referred were not consistent with the statement made to counsel. See *Grand Rapids, etc., R. Co. v. Monroe*, 47 Mich. 152.

For the reason stated, judgment is reversed and new trial ordered.

BLAIR, C. J., and GRANT and McALVAY, JJ., concurred with MOORE, J.

HOOKER, J. (*dissenting*). I am of the opinion that the charge given to the jury in this cause was erroneous in the statement that:

"If the jury should find that after the boy boarded the car others were permitted to board the car, particularly upon the running board upon which he stood, to such numbers that thereafter he *was* by other persons crowded out from the body of the car into a position of danger, * * * it was an act of negligence on the part of the

defendant after the inside running board was so loaded with passengers, including the deceased, to permit others to get upon that running board, and crowd plaintiff's deceased into a place of danger."

The fault in this is that it imposed a liability upon the defendant to see to it that the boy was not crowded out, although such crowding was not necessarily the result of an overcrowded condition of the running board, nor in fact due to it. The instruction is broad enough to hold the defendant liable for the actual crowding into a place of danger by another person, whether that result was reasonably to be anticipated by the conductor or not. If not, there was no negligence.

There are some difficulties in the way of controlling a large concourse of people who throng upon a street car which is a common thing in this country. It is manifest that a conductor single handed would find it difficult to prevent the common and dangerous practice of hanging on to every available spot upon a car which affords an opportunity for a precarious foothold or grip, a practice which is dangerous and not creditable to the public or authorities. Perhaps the true remedy for this is to hold the company negligent for running cars under a condition of things that its servants are powerless to prevent without more active assistance than the police authorities are generally willing to give, but, if so, such liability should be confined to cases where the injury is shown to be a necessary consequence of such crowding, and not merely coincident with it, where it was not reasonably to be anticipated by the conductor. The instruction was not so limited. I express no opinion on the question of contributory negligence.

The judgment should be reversed, and a new trial ordered.