## DIXON v. GREAT FALLS & OLD DOMINION RAILWAY COMPANY.*

RAILROADS; CARRIERS OF PASSENGERS; NEGLIGENCE.

1. There is no difference between the liability of a trolley line company operating its cars through the country, and that of a company operating a steam railroad, for negligence in receiving and discharging its passengers at fixed points or stations.

2. A railway station is any place owned or under the control of a railway company, and designated by it as a regular point at which it receives and discharges passengers or freight.

3. The duty of a railway company owning amusement grounds on which a station building and platform are located, and where passengers are invited by the company to assemble for the purpose of boarding its cars, is that of a common carrier, charged with the highest care for the safety of its passengers; and persons assembling in the building, on the grounds, or on the platform, at the point fixed by the company for receiving passengers, are at the company's station, and are passengers within the meaning of the law.

4. To expose a passenger to danger which reasonable foresight could have avoided is negligence on the part of the carrier.

*Carriers.*—Upon the question of the liability of carrier for personal injury to passenger by crowd at station or stopping place, see note to *Glennen* v. *Boston Elev. R. Co.* 32 L.R.A.(N.S.) 470; upon the duty of street railway as to condition of approaches to cars, note to *Messenger* v. *Valley City Street & Interurban R. Co.* 32 L.R.A.(N.S.) 881; and upon the degree of care toward passenger at station, note to *St. Louis, I. M. & S. R. Co.* v. *Woods*, 33 L.R.A.(N.S.) 855.

5. Where a woman who had bought a return ticket from the city to a pleasure resort in the country, owned and managed by an electric railroad company, and who was waiting at the station to board a car to return to the city, was pushed off the station platform, which was unprotected by a guard railing, onto the track, about 3 feet below, by passengers crowding upon the platform in an effort to board a car, and was injured, and there were no employees of the company present to restrain the people from crowding the platform, it was *held*, in an action by her against the company for damages, that the question of the defendant's negligence in not better protecting the way of approach to its cars was one of fact for the jury, and the trial court erred in directing a verdict for the defendant.

No. 2372. Submitted April 4, 1912. Decided April 22, 1912.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the court, in an action to recover damages for alleged personal injuries.    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia in a suit brought by appellant, Mary L. Dixon, against defendant, the Great Falls and Old Dominion Railway Company, to recover damages for injuries alleged to have been sustained while a passenger on defendant's railroad.

It appears that plaintiff, on Sunday, August 25, 1907, purchased a ticket at the Washington office of defendant to Great Falls, Virginia, and return. She reached the Falls in safety, and had returned to the station to board a car back to Washington. There was a crowd, according to the testimony of plaintiff's witnesses, of from five to six hundred persons waiting to board the cars. Plaintiff was accompanied by two young ladies, who stopped to visit with some friends. While she was waiting two cars came in, were loaded with passengers, and passed out. She observed that there was great crowding to get upon the cars. She took her position upon the platform with

the intention of boarding the next car. As the car approached someone called out that a car was coming, when the crowd, which was greater than the platform could accommodate, began to push forward onto and toward the front of the platform. Plaintiff was crowded off the platform onto the track, sustaining severe injuries. Defendant is charged with negligence in not so protecting the platform and restraining the crowd as to prevent the accident. At the conclusion of all the evidence, the court instructed the jury to return a verdict for defendant. From the judgment thereon this appeal was taken.

The sole question presented is whether there was sufficient evidence of negligence on the part of defendant to warrant the court in sending the case to the jury. The defendant was operating an electric line of railway between Washington and Great Falls, where it owned and maintained a pleasure resort. On the occasion of the accident it had carried large crowds of people to the resort. The accident occurred after dark in the evening, when the people were crowded at the station waiting for cars on which to return home. For the convenience and safety of passengers boarding the cars, a platform had been erected 90 feet long and 3 feet 10 inches wide, exclusive of the steps, approaching it. The evidence varied as to the height of the platform from the ground, some witnesses placing it as high as 3 feet. According to the evidence, no railing or guard had been erected to prevent persons from being pushed or crowded from the platform. Witnesses for the plaintiff testified that no employees of the company were present to restrain the people from so crowding upon the platform that an accident of this kind could have been prevented. It is admitted that no railings or guards of any kind were erected about the platform or premises for the safe regulation of the admission of passengers to the platform for the purpose of boarding the cars.

*Mr. Leonard J. Mather* and *Mr. John P. McMahon* for the appellant.

*Mr. Wilton J. Lambert* and *Mr. A. S. Worthington* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is contended by counsel for defendant that the situation at this station was not different, so far as its liability is concerned for accident to passengers, than would be the case where a crowd is attempting to board a car in the public street; that the rule as to electric lines of railway passing through the country and stopping at regular points to receive passengers is not different from the rule as to such cars passing through the streets of a city. We are not impressed with this contention. City streets are not under the control of the railway company, but of the city, and the railway company's responsibility to passengers boarding its cars does not attach until the passenger is in the act of entering the car. We perceive no difference between the liability of a trolley line company operating its cars through the country and that of a company operating a steam railroad. Both are common carriers, receiving and discharging passengers at fixed points or stations. A railway station may be defined as any place owned or under the control of a railway company, and designated by it as a regular point at which it receives and discharges passengers or freight. In this instance Great Falls was the terminus of the road. Defendant not only owned the amusement grounds, but the ground where the station building and platform were located and where passengers were invited by defendant to assemble for the purpose of boarding its cars. The duty of the company, therefore, was that of a common carrier, charged with the highest care for the safety of its passengers. To that end persons assembling in the building, on the ground, or on the platform at the point fixed by the company for receiving passengers, were at the company's station, and were passengers within the meaning of the law.

It is hardly necessary to repeat the universal rule that a common carrier is required to exercise the highest care for

the safety of its passengers. In other words, to expose a passenger to danger which reasonable foresight could have avoided is negligence on the part of the carrier. Defendant is not in position to defend upon the ground of lack of notice of the probability of a condition arising such as caused the injury to plaintiff. It had hauled the people there, with the expectation of returning them to their homes. The chief attraction was a searchlight which had recently been installed, and which was to be exhibited in lighting the Falls by night. The conditions were such that the people would in all probability be detained until a common time, when there would be a rush to secure accommodations for the return trip. Defendant was bound to anticipate the situation which it had created, and which was not unusual under similar conditions. Plaintiff, however, offered to prove that crowding and rushing for cars at this point was a common occurrence, and had frequently occurred on prior occasions, as well as earlier in the evening of the accident. This was competent to bring home to defendant knowledge of the dangerous practice.

Was the question of defendant's negligence in not better protecting the way of approach to its cars one of fact for the jury? We think it was. In *Cousineau* v. *Muskegon Traction & Lighting Co.* 145 Mich. 314, 108 N. W. 720, two girls went to an entertainment at a park owned by a railway company. Seven thousand people were at the park. After the entertainment, a great crowd assembled at the place provided for boarding cars. The platform was 50 feet square, and gradually rose from the ground to a level with the car steps. Plaintiff was standing upon the platform, about 6 feet from the track. When the cars appeared she was forced by the crowd between the motor car and trailer, and injured. The court, holding that the question of defendant's negligence should have been submitted to the jury, said: "It should be borne in mind that this amusement park was several miles from the homes of the people who were in attendance there. It was not owned by the public, but was under the entire control of the defendant. The people who were there came as patrons of the company, and by its invita-

tion, and for its profit. The crowd was made up of individuals. Before it could get smaller some of them must go away. Most of them must go by the same means which brought them. * * * No one knew better than defendant the number of persons it had brought to the park. In taking them there it was a fair implication, it would afford them reasonable safeguards from danger while on its ground, and reasonable facilities for returning hime. * * * It knew what its facilities were for taking care of a crowd. It knew its facilities for handling them. It invited the people who constituted the crowd to come. In the exercise of ordinary care it would know, and doubtless did know, proximately the size of the crowd. It also knew that many of its members would be eager to return home after a period of time had elapsed." After an exhaustive discussion of the authorities in support of this proposition, the court concluded: "The reasoning of these authorities seems to be without flaw, and applied to the facts of this case would require both questions discussed herein to be submitted to the jury."

It matters not that in the above case there were seven thousand people, and here only five or six hundred. The number, and whether its uncontrolled action caused the accident, were facts for the jury. It may well be that, under the circumstances disclosed by plaintiff's witnesses, a crowd of six hundred would be as effective in causing the accident charged as one of seven thousand.

In *McGearty* v. *Manhattan R. Co.* 15 App. Div. 2, 43 N. Y. Supp. 1086, a passenger waiting for a train at an elevated railway station was pushed from the platform and injured by the crowd which had been permitted to assemble for the purpose of taking passage on trains of the defendant company. In holding the question of negligence one for the jury, the court said: "The defendant must be assumed to have known the capacity of its platform and when it had admitted passengers to the extent of such capacity. If, when having done this, the passengers were not removed by its trains, it became its duty to permit no more to enter. It had no more right to accumulate a crowd at the rear, which, pressing forward, would

precipitate those at the edge of the platform into the street, than it would have the right to go upon the platform and push them off by physical force." This ruling is supported in *Dittmar* v. *Brooklyn Heights R. Co.* 91 App. Div. 378, 86 N. Y. Supp. 878; *Young* v. *New York, N. H. & H. R. Co.* 171 Mass. 33, 41 L.R.A. 193, 50 N. E. 455; *Taylor* v. *Pennsylvania R. Co.* 50 Fed. 755; *Illinois C. R. Co.* v. *Treat,* 75 Ill. App. 327; *Beverley* v. *Boston Elev. R. Co.* 194 Mass. 450, 80 N. E. 507.

It is true that in the cases just cited passengers were admitted through a gate onto the platform. It was contended at bar that in cases like the ones cited, the negligence of the railway company consisted in admitting more people to the platform through the gates than could be safely accommodated, and that, inasmuch as no means had been provided in the present case for limiting the number of people which might assemble on and about the platform for the purpose of boarding the cars, a different rule should be applied. To hold that a railway company which erects a fence or barrier for the purpose of regulating the number of peoples who may be admitted to the platform is guilty of negligence in admitting more than the inclosure will safely accommodate, and that a company which, without restriction, permits crowds to assemble at its platform, causing injury to a passenger, is not guilty of negligence, would be equivalent to placing a premium upon wanton carelessness. If there is any distinction in the degree of imputable negligence, they should be reversed, and the former held less guilty than the latter. The cases properly make no distinction, holding a railway company guilty of negligence in failing to maintain reasonable arrangements for the control and protection of its passengers against dangers that naturally may be anticipated. It logically follows that it is required to select a sufficient number of competent employees, and employ whatever agencies are necessary, to reasonably enable it to meet the high degree of vigilance and care to which it is held. *Kuhlen* v. *Boston & N. Street R. Co.* 193 Mass. 341, 7 L.R.A.(N.S.) 729, 118 Am. St. Rep. 516, 79 N. E. 815.

The judgment is reversed, with costs, and the cause is remanded for a new trial.          *Reversed and remanded.*