**SCHWARTZMAN v. LLOYD (two cases).**

Nos. 6456, 6457.

United States Court of Appeals for the District of Columbia.

Decided Jan. 27, 1936.

Henry I. Quinn, of Washington, D. C., for appellant.

Stanley H. Fischer and Norman Fischer, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

These cases are appeals from judgments of the Supreme Court of the District of Columbia entered upon verdicts in favor of the appellees. The cases were consolidated for trial and for appeal.

Case No. 6456 was brought by the appellee, William B. Lloyd, as plaintiff below, to recover for the expenses of illness of his wife, May P. Lloyd, and for the loss of her services and consortium, resulting from personal injuries sustained by her through the alleged negligence of the appellant, Leon Schwartzman, defendant below, and his agents. Case No. 6457 was brought by Mrs. Lloyd herself to recover damages for her injuries personally sustained through the alleged negligence of the appellant and his agents. Hereinafter the appellees will be referred to as plaintiffs and the appellant as defendant.

The testimony supporting the plaintiffs' case was to the effect that: The defendant, the owner of a mercantile establishment at 1115 G Street, N. W., Washington, D. C., advertised a closing out sale to commence on the morning of January 9, 1932. Mrs. Lloyd, hearing of the sale through a radio announcement, attended, arriving about a half an hour after the sale had commenced. The defendant's store had two glass show windows set forward on each side of the front door so that there was a glass sided areaway between them leading to the door. When Mrs. Lloyd arrived, this areaway was filled with customers, and the crowd had overflowed around to the front of the building. Estimates as to the size of the crowd varied. One witness, who accompanied Mrs. Lloyd, said "they saw such a crowd witness did not think the store was opened." Mrs. Lloyd said "there was a large crowd." Another said "the little areaway (meaning the space between the East and West show windows) was filled with people and people were outside of the areaway down to the curb." In numbers one witness said "that there were probably twenty or twenty-five people in that area between the windows and on the public sidewalk there was some more people." Another said "that she thought there were seventy-five or a hundred people on the sidewalk and in the area between the windows." Mrs. Lloyd stood a little out of the areaway itself, but near one of the windows—according to her companion "about a foot away." The defendant's agents, who were in charge of the sale, were admitting to the store at one time only as many as could be waited on by the clerks inside. The customers thus admitted were then let out a rear door and the front door opened to admit a new group —seven or eight at a time. When this occurred, those still left outside "surged forward, worked forward like they expected to get in at that time" with the result that those in the areaway were pressed closely against the glass windows. As one witness said, "they were crowded in there right smart"; another, "well, they were all squeezed up in there." According to Mrs. Lloyd "naturally, like all women, everybody wanted to get in first * * * like any crowd they pushed and shoved one another"—although apparently the crowd was not unruly. No warnings were given to the crowd of the possibility of the window's breaking, no barricades had been erected to keep the crowd from pressing against the windows, and there were no policemen or guards to control the crowd. Agents of the defendant had looked out at the crowd from the front of the store. People were admitted in the manner above described about twice after Mrs. Lloyd arrived. On the last occasion "at the time they let some people in the people sorter moved forward at that time * * * the crash came almost instantly after that." One witness "could not remember which window the crack was in, whether the one parallel with the street or the one running back towards the door; [but] she noticed this crack just a couple of minutes before Mrs. Lloyd was hit." This witness said "all of the glass fell down at once." Mrs. Lloyd, who was still a little outside the areaway—having permitted some to go ahead of her—had heard some one remark about a window's being cracked and had turned to go away,

but when the glass fell she was pitched forward on the ground and cut on the legs and hands, with resultant disturbance causing premature birth of a child, attempts at suicide, and confinement to hospital and home.

Testimony relied upon by the defendant in some particulars conflicted with the above. Thus Mrs. Lloyd's companion at one point said, "Well, I wouldn't call it a crowd." One witness admitted "that she did not notice any movement of the people about the time the men came to the door and looked out and before the crash came"; and it was testified that there was no pushing and shoving; that the crowd was told each time the door was opened "to take it easy, they would all be let in." There was also testimony by one of the defendant's witnesses that "at no time did he see any indication of the danger of the crowd crashing through the window, or of the window breaking"; and there was testimony that many other sales on these and similarly arranged premises, and even on premises with "island show cases"—set in the center with show windows around so that people would be entirely surrounded by glass—had been conducted in Washington without barricades and without mishap.

The plaintiffs' declarations charged negligence as follows: Failing to guard or protect the show windows when the defendant or his agents saw, or by the exercise of reasonable care could have seen, the crowd of people pressing against and into them; failing to warn the public or in any manner to advise them of the possible breaking of the glass after the defendant or his agents saw, or by the exercise of reasonable care could have seen, the windows cracking; failing to take any precaution or in any manner to endeavor to prevent the show windows from breaking and falling when the defendant or his agents saw, or by the exercise of reasonable care could have seen, the windows cracking. The defendant denied negligence. There was no plea of an affirmative defense.

At the close of the plaintiffs' case, the defendant moved for a directed verdict on the ground that the evidence did not show the violation of any duty on the defendant's part, on the ground that Mrs. Lloyd's injuries were not due to any negligence on the defendant's part, and on the ground that the evidence did not support the allegations of the declarations. This motion the trial court denied. It was renewed at the close of the defendant's case, and again denied.

There were eight assignments of error. The sixth was not argued in the briefs and will, therefore, not be considered here. The first five assignments involve the single question whether there was sufficient evidence of negligence on the part of the defendant as charged in the declarations to take the case to the jury:

Under familiar rules, on motion for a directed verdict the evidence must be construed most favorably to the plaintiff. Thomas R. Riley Lumber Co. v. McHarg, 47 App.D.C. 389, 390. And the plaintiff is entitled to the full effect of every legitimate inference. Dodge v. Rush, 28 App.D. C. 149, 154, 8 Ann.Cas. 671. If, so viewing a plaintiff's case, there is lacking evidence upon which jurymen can properly find a verdict—there must be more than a mere scintilla—the court must intervene. Gunning v. Cooley, 281 U.S. 90, 93, 94, 50 S.Ct. 231, 74 L.Ed. 720. Or, as sometimes said, if the evidence is not such that upon it all reasonable men must reach the same conclusion, or if, to put it conversely, upon the evidence reasonable men might differ, the case is for the jury, not the court. Grand Trunk Railway Co. v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 36 L.Ed. 485; Chr. Heurich Brewing Co. v. McGavin, 56 App.D.C. 389, 390, 16 F.(2d) 334, 336; Weisenberg v. Hazen, 63 App.D.C. 398, 400, 73 F.(2d) 318, 320.

The rule of substantive law applicable to this kind of case is well settled: When one "expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." 3 Cooley on Torts (4th Ed.) § 440. Determination of the question whether there is sufficient evidence of violation of this rule to submit to a jury is largely a question of judgment in each case, and extensive review of other cases is ordinarily not useful. There is, however, a distinctive feature of the instant case which is found also in certain of the cases relied on by the plaintiffs, and which warrants comment; that is, the damming up of the flow of the crowd. In Ann E. Greenley v. Mil-

ler's, Incorporated, 111 Conn. 584, 150 A. 500, the plaintiff was in a sale crowd, packed into the entrance and up against the door of defendant's store and held there after the advertised opening time so that when the door was opened the crowd pressed forward, breaking—to the plaintiff's hurt by falling glass—the entrance way windows. There were no barricades around the windows, and supernumerary policemen, present for the principal purpose of preventing too many at a time from getting in, did nothing towards keeping the crowd in order except to request them to step back from the door. The crowd was apparently impatient, tapping or knocking on the windows. The Supreme Court of Errors said that the plaintiff being upon the defendant's property by invitation, the defendant owed her the duty of exercising due care to have its premises safely constructed and maintained, and the duty to exercise reasonable care in the conduct of the business and to guard against subjecting the plaintiff to dangers of which the defendant was cognizant or which it might reasonably have anticipated; and the court held that upon the facts above set forth the jury might have found the defendant negligent because the control of the situation was in the defendant's hands and it failed entirely to exercise it in a reasonable way. The court held that the jury might have found: That the defendant should have known that the late opening of the store would increase the number of people waiting in the entrance way and in front of the store; that it knew or should have known of the crowd's pressing into the entrance way, and that those in the entrance way could not withstand the pressure behind them or govern their own direction, and that its show windows would be liable to break if there was severe pressure against them by the disorderly crowd; and that although the defendant knew or should have known of this condition, it failed to make any effort to control the crowd or to open its doors and thus avoid or lessen the danger liable to arise out of this condition. The trial court had directed a verdict for the defendant. The Supreme Court of Errors reversed this ruling and ordered a new trial. The court remarked in that case that the facts and evidence would not have justified a conclusion of negligence from the failure of the defendant to have placed barricades or other protection about the windows to prevent their being broken. But we think this

statement, taken in connection with the whole of the case, meant only that the failure to place barriers would not alone have justified a conclusion of negligence if other reasonable means to prevent injury had been used by the defendant. While the crowd in that case was as the court said disorderly, this seems to have been but a description of its pressing and pushing into the entrance way, in a manner not greatly dissimilar to that of the crowd in the instant case.

In Taylor v. Pennsylvania Co. (C.C.) 50 F. 755, an excursion crowd attracted by the defendant railroad's advertisements of a bicentennial celebration, was closely packed in a depot vestibule leading to the train gates. When the latter were opened, the plaintiff, who was in the crowd, was jammed, by the crowd's sudden surging, against an iron railing constructed to turn people to the narrow exit of a gateway and was thus injured. For the plaintiff it was testified that but one of the five exit gates was open and the crowd forced through it; for the defendant, that all were open. The defendant had an extra force of policemen and a large number of its own employees to direct and control the crowd. The plaintiff's witnesses characterized the crowd as orderly and jolly. The jury was instructed that the duty of a railroad company towards passengers at station or train exits is to exercise such care as a person of reasonable and ordinary prudence and skill would usually exercise under similar circumstances, and that it was bound only to furnish such a suitable number of officers and guards as would insure order, keep the peace, and keep the crowd in proper control so as to direct their movements toward the train, and that whether such suitable number of officers and guards was furnished in the case was for the jury to determine. The case was submitted to the jury under these instructions and a verdict found for the plaintiff. On a motion to set aside the verdict and for a new trial, the District Judge ruled that the jury, having found want of care in the defendant either because the guards were not stationed in the most suitable places or because they were not active and energetic enough, it was not justifiable to say that such a conclusion was not supported by the evidence.

In Dixon v. Great Falls & Old Dominion Railway Co., 38 App.D.C. 591, Ann.Cas.

1913C, 571, the plaintiff was in a Sunday crowd accumulated, to return to Washington, on the defendant railway's loading platform at its Great Falls amusement resort. The crowd had been especially attracted by a newly installed searchlight to light the falls by night. As a car approached, the crowd, which was greater than the platform could accommodate, began to push forward toward the front of the platform, and the plaintiff was crowded off onto the track, sustaining severe injuries. Thus in this case as in the Taylor case, the crowd was dammed up at a common point, by not carrying it away in cars as fast as the people accumulated, just as in the case at bar and in the Greenley case, the crowd was dammed up by not freely admitting it into the store as it accumulated. The defendant was charged with negligence in not so protecting the platform and restraining the crowd as to prevent the accident. The trial court instructed the jury to return a verdict for the defendant. Upon an appeal involving the sole question whether there was sufficient evidence of negligence to take the case to the jury, this court reversed and remanded for a new trial. The opinion, delivered for the court by Mr. Justice Van Orsdel, was in part based upon the rule that a common carrier is required to exercise the highest care for the safety of its passengers. But this is only another way of stating that the hazards of railroad traffic are such that they greatly increase the care which a prudent man would use under the same or similar circumstances. But an additional ground for the decision was, in substance, the rule quoted from Cooley above. Mr. Justice Van Orsdel said: "to expose a passenger to danger which reasonable foresight could have avoided is negligence on the part of the carrier * * *. The conditions were such that the people would in all probability be detained until a common time, when there would be a rush to secure accommodations for the return trip. Defendant was bound to anticipate the situation which it had created, and which was not unusual under similar conditions." The decision was especially based upon Cousineau v. Muskegon Traction & Lighting Co., 145 Mich. 314, 108 N. W. 720, and McGearty v. Manhattan Ry. Co., 15 App.Div. 2, 43 N.Y.S. 1086, similar cases, also relied on by the plaintiffs in the case at bar, and Taylor v. Pennsylvania Co., above.

In support, on the authorities, of its position that there was no case for the jury, the defendant relies upon three cases: Helena M. Lord v. Sherer Dry Goods Co., 205 Mass. 1, 90 N.E. 1153, 27 L.R.A.(N.S.) 232, 137 Am.St.Rep. 420, 18 Ann.Cas. 41; F. W. Woolworth & Co. v. Conboy (C.C.A.) 170 F. 934, 23 L.R.A. (N.S.) 743; and Fenasci v. S. H. Kress & Co., 17 La.App. 170, 134 So. 779. The case last mentioned is clearly distinguishable. The plaintiff was injured in the arcade of the defendant's building. The crowd was an Easter shopping crowd, not, so far as the report shows, collected by any advertisements of a sale, and not larger than the regular Saturday afternoon congregation of shoppers, and not dammed up as in the case at bar by a closed door. As the plaintiff came out of the building alone and was walking through the arcade, some one roughly and unexpectedly jostled or pushed her into the show window, causing it to break, so that she was cut by falling glass. The trial judge found that the defendant was free from fault, and the holding of the court on appeal was that the proximate cause of the accident was the rough and violent push that the plaintiff sustained by some third person for whose action the defendant was not liable. F. W. Woolworth & Co. v. Conboy is in some aspects like the case at bar, and in some not. As in the case at bar, there was a crowd, of which the plaintiff was a member, accumulated in the defendant's store by advertisements of a sale. It rushed to a common point—and by this in a very broad way like the case at bar endangered the plaintiff—because of a clerk's standing on a long counter handing out goods to purchasers who were required to approach him with the correct change. The crowd became violent, some women fainting, others clambering on the counter. Back of a nearby adjoining small counter was an employees' stairway to a basement. Unlike the case at bar, in respect of the likelihood of injury and the duty to foresee danger, the plaintiff was, or claimed she was, pushed down past the adjoining counter, into a side aisle between it and a partition, and then head foremost down the stairs. Also unlike the case at bar, the point of danger, the stairway, was guarded on three sides, by the small counter, a railing, and a wall. On these facts the Eighth Circuit reversed for failure to grant the defendant a directed verdict, holding that the public assume

the risk of open stairways as an ordinary fixture of store premises. This case is, we think, too different from the case at bar to be persuasive—especially because of the extreme violence of the crowd. Ladies rarely climb on counters, or push each other down back stairways. It was far from a natural or probable consequence of gathering the crowd at one counter that it should become so violent as to force the plaintiff down a stairway guarded by being back of another counter. In Lord v. Sherer Dry Goods Co., the plaintiff, a child, was with her mother descending a stairway from a balcony in a department store. A sale crowd had been accumulated by advertisements. The store superintendent standing at the head of the stairway near a jewelry counter, loudly announced, "Here's where you get your seventy-five cent and one dollar jewelry for nine cents," with the result that a crowd rushing upon the plaintiff and her mother from behind, to get away from the crowd collecting at the jewelry counter, pushed the plaintiff down the stairs to a landing and injured her. The Supreme Judicial Court of Massachusetts held that a store being for the purpose of attracting crowds of customers and the stairway being of ordinary construction, there was no negligence in merely directing the attention of the crowd to some part of the store where they could get good bargains, that there was no reason to anticipate any danger to those upon the stairs. In a very broad way the case parallels the one at bar, in that there was an accumulation of a crowd at a particular point and in a manner likely to result in injury to one at or near that point. To the extent that it may be said to parallel the case at bar, we are constrained not to follow it.

We do not assume to lay down a rule that it is evidence of negligence to attract a crowd to or in a store. The public assume the ordinary risks of ordinary crowds. But if the crowd is held or handled in a manner likely to cause injury, the storekeeper must use due care to guard against it. We think that evidence that the flow of a crowd collected by a defendant has been dammed, whether at a loading platform as in the Dixon case, or at a gate as in the Taylor case, or in a store entry areaway between glass windows as in the Greenley case and the case at bar, without precautions—in the case at bar, according to the plaintiffs' testimony, without barricades, warnings or guards—is evidence

from which reasonable jurymen might properly find that, in violation of the rule of law stated by Cooley above, the defendant had invited the public and the plaintiff into danger, without exercising ordinary care to render the premises reasonably safe for the visit. It is not unreasonable to expect that windows pressed against by a crowd will break. The evidence urged by the defendant to the effect that sales similarly conducted on this and other premises had proceeded without mishap, while of some materiality in respect of notice to the defendant of danger, is certainly not conclusive upon the jury upon that topic; and such evidence is of little, if any, value on the question of due care. The mere fact that no mishap occurred in such other sales does not necessarily mean that the likelihood of a mishap ought not have been guarded against there as here.

Assignment number seven alleges error in refusing to grant defendant's requested instruction number five, which was in the following terms:

"The jury are instructed that there was no obligation resting upon the defendant to barricade or guard the show windows referred to in this case, and that his failure to do so is not proof of negligence which would justify you in returning a verdict for the plaintiff. Unless you find from the evidence that the defendant had knowledge that the said windows would probably break while the plaintiff was standing near the same, and the probability or the danger of the same breaking would not be manifest to a person of ordinary intelligence standing in the crowd that had gathered near said windows, and did fail to warn the plaintiff of said danger when she was ignorant of the same, then your verdict must be for the defendant." We think this instruction was properly refused because in the first sentence it told the jury in absolute terms that the defendant need not in the use of due care barricade or guard the show windows; whereas, under our view of the law as above explained, the jury might properly have found failure to barricade or guard the windows one way in which the defendant was negligent.

Assignment number eight asserts error in charging the jury as follows:

"In determining this question of negligence the jury may take into consideration the nature and character of the sale advertised, the size and dimension of the entrance or area way leading into the store,

the number and size of the show windows, and their proximity to the entrance, the number of people congregating within such area way and in front of the premises, their conduct and demeanor, whether the defendant knew or by the exercise of reasonable care could have known of their presence and their conduct, the methods followed by the defendant in admitting them to the store and all other facts and circumstances in evidence bearing upon that question.

"If the jury find from a preponderance of the evidence that the defendant was negligent in the manner in which he maintained such premises for the purposes of such sale, that is, if you so find that the defendant failed to exercise such care as an ordinarily careful and prudent person would have exercised under the same circumstances, and you further find that such negligence was the direct and proximate cause of the breaking of the show window and the resulting injuries to the plaintiff, then your verdict should be for the plaintiff."

The defendant asserts that, in view of the refusal to instruct as requested in defendant's requested instruction number five, the jury under the charge given could find against the defendant upon any theory, even though not included in the charges in the declarations. Defendant particularly complains that that portion of the charge telling the jury that if they find the defendant negligent "in the manner in which he maintained such premises for the purposes of such sale," was calculated to lead the jury to believe that they could consider the question whether the windows were safely or properly constructed, or whether, after construction, they had been maintained in reasonably safe condition. We think this position not well taken, and, on the contrary, that the jury from the phrase "maintained such premises for the purposes of such sale" taken in connection with the rest of the instruction, must properly have understood that the court meant maintaining the premises without barricades or warnings or control of the crowd at the sale. A comparison of the instruction complained of with the charges in the declarations as above set forth discloses, in our view, that it is not too broad. We think it properly stated the law applicable to the evidence for the plaintiffs.

In each of the cases, therefore, the judgment of the trial court is affirmed.