ANN E. GREENLEY *vs.* MILLER'S, INCORPORATED.

Third Judicial District, Bridgeport, April Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued April 10th—decided June 2d, 1930.

*Albert M. Herrmann* and *Nathan Goldberg,* for the appellant (plaintiff).

*Walter J. Walsh,* for the appellee (defendant).

WHEELER, C. J.   The jury might reasonably have found from the evidence these facts:   The defendant conducted a store in New Haven dealing in women's apparel.   On July 17th, 1929, it inserted in a New Haven evening paper an advertisement of a special sale on July 18th, 1929, at nine o'clock sharp, of a special lot of dresses at $1 apiece.   The plaintiff read this advertisement and went to this store the next morning at about quarter to nine for the purpose of purchasing some of these dresses.   There were already quite a few people at the entrance and the plaintiff stood in the entrance way to the store a few feet from the line of the sidewalk.   The entrance was four feet, nine inches wide at the sidewalk.   The length of the entrance from the sidewalk line to the door was sixteen feet.   On either side of this entrance was a show window.   The widest distance between the windows on either side was seven and one half feet.   The prospective customers kept increasing rapidly in numbers and in a short time stood jammed and packed in this entrance, shoulder to shoulder, and spread thence over the sidewalk.   The crowd pressed up close to the store door.   The defendant had two supernumerary policemen in the store for the principal purpose of prevent-

ing too many entering at one time when the door should be opened. The officers could see through the door the crowd growing thicker and thicker and could hear some tapping or knocking on the windows. Some of the crowd were calling to open the doors. The manager, at about nine-ten, ordered one of the officers to push the crowd back to ease the door in order that they might take a picture. He came out of the door, succeeded in getting the crowd back a foot or two from the door, and then pushed himself sideways through the crowd to the street and returned to the store through a side door. The officer did nothing toward keeping the crowd in order except to request them to step back. The crowd objected to the taking of a picture and to the failure to open the door. They were restless before the officer appeared and after he left they became more impatient. As soon as the officer left they closed up and crowded in the entrance again and pushed forward more than they had. Those in front of the plaintiff were not pushing ahead much, but those behind her were pushing more. The officers at the door saw the conduct, actions and attitude of the crowd. The manager and an assistant were in the store during this period directing the arrangement of the goods for the sale. In five or ten minutes after the officer had returned to the store the door was opened and the crowd pressed forward sweeping the officers with them a number of feet. The plate glass windows ran down to within a foot or two of the floor. There were four sections of glass in the entrance on each side of the doorway, joining in a point, in all on both sides eight pieces of glass. The pressure of people crowding against them caused them to break and the falling glass injured the plaintiff. There were no guards or barriers of any kind around the windows to protect them from being broken by the crowd push-

ing against them. The plaintiff at the time of her injuries was upon the defendant's property upon its invitation and it owed to her the duty of exercising due care to have its premises safely constructed and maintained and to exercise reasonable care in the conduct of the business and to guard against subjecting the plaintiff to dangers of which it was cognizant or which it might reasonably have anticipated.

The plaintiff's claim of negligence was threefold; (a) that the defendant knew or should have known that its advertisement would draw a large number of people to the store and that so large a number of people in the narrow entrance way, in such close proximity to the plate glass windows, was liable to crowd and push and thus to break the windows, unless barriers or other protection were placed about the windows to prevent their being broken, (b) that the failure to open the door of the store at the advertised hour caused the people to congregate in increasing numbers and in consequence to add to the liability of danger from the restlessness and turbulence of the crowd in so congested a place, (c) that the defendant saw or should have seen or known of the crowd pressing forward in the entrance way and against the show windows and despite this failed to open the door and let the crowd in or to take any other measures to protect the people against the danger from the breaking of the windows.

So far as appears of record the construction of the show windows was entirely in accord with proper design and construction.

The jury might reasonably have found these additional facts and conclusions: The defendant should have known that the late opening of the store would increase the number of people waiting in the entrance way and in front of the store to enter it. It

in fact knew or should have known of the waiting crowd and the throng pressing and pushing into this narrow entrance way. It knew or should have known that those in the entrance way could not well withstand the pressure of the throng behind them or govern the direction in which they went. It knew or should have known that its show windows of glass in four sections to each side would be liable to break if there was severe pressure against them by this disorderly crowd of people. Although the defendant knew or should have known this condition it failed to make any effort to control the crowd or to open its doors and thus avoid or lessen the danger liable to arise out of this condition. The control of this situation was in its own hands and it failed entirely to exercise it in a reasonable way. If the jury found these facts and reached these conclusions it might have found the defendant negligent. The facts in evidence would not have justified a conclusion of negligence from the failure of the defendant to have placed barriers or other protection about the windows to prevent their being broken.

If the jury also found that the plaintiff's contributory negligence did not materially contribute to the injuries suffered by her, their conclusion must have followed that the defendant's negligence as found by them was the proximate cause of the injury to the plaintiff.

The court was in error under such circumstances in directing a verdict.

We reiterate our rule in regard to the power of the trial court to direct a verdict: "When the reasoning mind could not reasonably reach another conclusion, the judge should direct a verdict, otherwise he should refuse to direct. The same end can be reached by setting aside the verdict after the plaintiff has been accorded a full trial of his cause. The fact that the

directed verdict may, by the large expense entailed in printing the evidence, result in the inability of the defeated litigant to have the directed verdict reviewed, should make the trial judge especially careful to be sure of this issue before directing a verdict, and if any question remains in his mind as to the ruling, he ought to deny the motion to direct. Subsequently, upon the motion to set aside the verdict, he can examine the evidence in the light of our law with deliberation and reflection and arrive at his conclusion apart from the haste and pressure of the court-room." *Ulrich* v. *New York, N. H. & H. R. Co.*, 98 Conn. 567, 570, 119 Atl. 890.

There is error and a new trial is ordered.

In this opinion the other judges concurred.