VIRGINIA DENTON *v.* THIRD AVENUE THEATRE COMPANY, INC., *et al.*

(No. 9533)

Submitted February 1, 1944. Decided March 7, 1944.

608

*Fitzpatrick, Strickling & Marshall,* for plaintiffs in error.
*Lilly & Lilly,* for defendant in error.

RILEY, JUDGE:

Virginia Denton instituted this action of trespass on the case in the Circuit Court of Cabell County against Third Avenue Theatre Company, Inc., a corporation, for recovery of damages for injuries received by her in a fall while a patron in defendant's motion picture theater located on Third Avenue in Huntington, West Virginia. The circuit court having entered judgment upon a jury verdict in plaintiff's favor for three thousand dollars, defendant obtained this writ of error, and asserts that the

evidence fails to show a breach of any duty owed by defendant to plaintiff, but does show, as a matter of law, that plaintiff's contributory negligence proximately contributed to the resulting injuries.

Defendant operates the Rialto Theater, which has a seating capacity of about four hundred persons. The seating arrangement therein is such that one large aisle leads from the lobby down the center of the theater to the stage, with rows of seats on either side thereof. Plaintiff, accompanied by her two infant children, purchased three tickets and was accepted as a patron of the theater about seven o'clock in the evening of August 30, 1941. Proceeding from the theater entrance toward the stage, Mrs. Denton and children seated themselves in a then vacant row and occupied the three seats farthest from the aisle. While Mrs. Denton admits that the light in the theater was "just as good in there as you ordinarily find in picture shows", the lighting in the theater is described by plaintiff's husband at the time of the trial thus: "Four lights on each side of the theater. At the top of the shade a reflector throws a light toward the ceiling, so that they are completely shaded at the bottom. These lights are placed nine or ten feet from the floor, and there are no lights on either row of seats along the aisle."

Approximately an hour after plaintiff seated herself, an unidentified man and woman seated themselves in the same row in which plaintiff was but near the aisle so that there was one vacant seat between plaintiff and the woman, next to whom sat the man. Plaintiff testifies that some time after this couple seated themselves she heard a sound which "sounded like glass breaking." A few minutes later she noted a strong odor "like Clorox or Magic or other liquid cleanser and I realized then that someone probably had dropped a bottle of Clorox, or it had fallen out of something, because the odor immediately followed the sound of breaking glass". According to plaintiff the sound seemed to come from the direction

where the unidentified couple was seated, but she admits they did not seem to be concerned. Plaintiff testified that about fifteen minutes after the breaking of glass, one of the ushers in the theater came down the aisle, leaned over, talked to the man and woman seated in the row with plaintiff, and then "leaned over and acted as if he were picking up something, and I could hear from the noise that it sounded as if it were glass, and then I saw him go out the aisle and he was holding his hands in front of him as if he had something in them". More than an hour after she smelled the odor, plaintiff and her children started to leave their seats. There is no evidence that from the time plaintiff and her children became seated until they started to leave, other patrons of the theater, other than the unidentified couple, entered the row in which plaintiff was seated.

Plaintiff describes her movements in leaving the theater thus: "I got up from my seat and walked over to where the man and woman were seated; and the man and woman did not offer to get up for me to pass, and I said, 'Pardon me,' and they both raised up, and I took at least one or two steps, and then my foot hit this package. It felt as though it were canned goods. I couldn't be positive what was in the sack, but that is the feeling it had when I hit the package. And of course I lost my balance and fell, and I struck my right knee when I fell." Plaintiff's version is that the object was in the same place where the usher had picked up the broken glass. She says that she fell forward between the rows of seats, so that her head extended out into the center aisle. She tried to get up but could not; a man across the aisle helped her to her feet, but when she started to take a step, she again fell, and that on this occasion one of the ushers helped her to the outside and called a taxi-cab to take plaintiff home.

Ernest Johnson, manager of the theater when plaintiff was injured, testified that he and James Brooks were the two male employees there that evening, and that he

helped Mrs. Denton to walk outside of the theater, but says that she was not on the floor but simply "off balance". He admits that she told him she had fallen, but he does not recall that she told him what caused her to fall. Both employees detected the Clorox odor, and Johnson testified that he attempted to find the source thereof, went up and down the aisles, but "didn't find where it was coming from." To rid the theater of the odor the fans were reversed. Johnson observed no groceries on the floor of the theater, and says that he looked in the various rows "as best I could, without looking into the individual seats." According to him, he made an examination of the theater after Mrs. Denton had left, but found no glass. He admits, however, that he found a package — "a paper bag with a — some form of cleanser in it", and describes the package as being about a foot long and about three and a half inches thick, and says that the sack was dry. Brooks denied Mrs. Denton's identification of him as the employee who talked with the couple and removed the broken glass. His testimony is that he was on the door at the time, made no search for the source of the odor and denies that he found any glass in the theater that night. He says, too, that while walking down the aisle the rows are visible, even though patrons are seated therein. Plaintiff contended that from her seat she could not see to the floor to determine whether there were any objects on the floor. Defendant maintained a checking room for parcels and made no charge for that service, and Johnson testified that if any patrons came into the theater with any packages "we didn't know it".

The record contains evidence that as a result of the fall Mrs. Denton has undergone two operations on her right knee. There is no contention by defendant that the jury award of three thousand dollars for injuries sustained is excessive and, therefore, we do not deem it necessary to detail here the extent of injuries sustained or the discomfort plaintiff has experienced as a result of the injury.

*Hunker* v. *Warner Bros. Theatres, Inc.,* 115 W. Va. 641. 177 S. E. 629, pt. 2 syl., expressed the rule of care owed by the owner of a public amusement place to an invitee-patron thus:

> "The proprietor of a place of public amusement is not an insurer of the safety of his patrons. He does impliedly warrant that the premises are safe for the patrons, but he does not contract against unknown defects not discoverable by ordinary care. The degree of care required of him in this respect is the care which an ordinarily careful or prudent man would exercise, under like circumstances."

For a collation of authorities which have dealt with the degree of care required of the proprietor or manager of a theater for the safety of patrons thereof, see generally the following A. L. R. annotations: *Waddel's Admr.* v. *Brashear,* 257 Ky. 390, 78 S. W. 2d 31, 98 A. L. R. 553, note pages 577-584; *Frear* v. *Manchester Traction, Light & Power Co.,* 83 N. H. 64, 139 A. 86, 61 A. L. R. 1280, note pages 1300-1302; *Durning* v. *Hyman,* 286 Pa. 376, 133 A. 568, 53 A. L. R. 851, note pages 863-866; *Carlin* v. *Smith,* 148 Md. 524, 130 A. 340, 44 A. L. R. 193, note pages 209, 210; *Demarest* v. *Palisades Realty & A. Co.,* 101 N. J. L. 66, 127 A. 536, 38 A. L. R. 352, note pages 361-362; *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 120 A. 300, 29 A. L. R. 17, note pages 33-35.

However, the facts under consideration compel the conclusion that the jury's finding of liability is clearly warranted. It is admitted by defendant that a box of soap chips was found on the floor of the theater. According to Mrs. Denton she could see the laps of the unidentified couple, and both at the time she heard the breaking of glass and when the usher talked with the couple, she looked and saw that they had no packages in their laps. In these assertions Mrs. Denton is not contradicted. Certainly, had there been a package of the size of the box of soap chips on the lap of either the man or woman,

plaintiff could have seen it. The jury believed her version that she did fall and that the package over which she tripped was at the place where defendant's employee picked up the glass. It is true a considerable period elapsed from the time, as plaintiff asserts, that defendant's employee talked with the man and woman; but if the package was not on the floor then, who placed it there and when? If the couple had no packages in their laps, and since there is no showing that some other patron of the theater seated himself in the same row after the usher's inspection, so that the jury could believe that such patron had placed a package of soap chips on the floor, the jury could well have concluded that the box was there at the time plaintiff says the usher picked up the broken glass. If so, its presence as defendant knew, or should have known, was such an obstruction as might be the causal means of some patron tripping and falling. Whether the package was placed upon the floor by a patron is not shown. Of course, had it appeared that an employee of defendant had placed it there, defendant's liability for injuries to an invitee could not be questioned; but granting to defendant its position that it was put there by a patron, the liability of the theater company which the trial court imposed, and which we are now approving, does not emanate from the patron's act but from the failure of defendant's employee to discover and remove a foreign object present on the floor. By defendant's instruction No. 6, the jury was instructed, in part, that there could be no verdict for plaintiff unless it believed from a preponderance of the evidence that the defendant knew or by the exercise of reasonable care should have known that a foreign object had been placed by another patron in a place where plaintiff might fall over it. The jury has adopted plaintiff's version, and in an appraisal in this Court of the judgment entered on that verdict, we must accept as true that version. *Voss v. King*, 38 W. Va. 607, 18 S. E. 762. Since it is apparent that the jury believed plaintiff's testimony that the em-

ployee picked the broken glass from the floor in the row in which she was seated, it had the right to believe that by the exercise of reasonable care the same employee could and should have seen any other foreign object remaining on the floor and should have removed it, and that such failure resulted proximately in injury to the plaintiff. "Where the evidence and circumstances bearing upon the question of negligence are such as to raise divergent views with respect thereto, the verdict of a jury based thereon will not, ordinarily, be disturbed; and only in cases where the evidence contrary to the verdict clearly preponderates." *Webb* v. *Williamson Tobacco Co.*, 121 W. Va. 115, pt. 2 syl., 2 S. E. 2d 898.

It is difficult to perceive how plaintiff could have been guilty of contributory negligence. Her testimony that the lighting did not enable her to see the floor from her seat is not contradicted. Moreover, since the jury believed her testimony to the effect that defendant's employee removed glass from the floor, she had the right to assume thereafter the free and unobstructed passage of the row in which she was seated.

We therefore affirm the judgment of the lower court.

*Affirmed.*