## RANKIN v. S. S. KRESGE CO.
### No. 59-F.

District Court, N. D. West Virginia.

March 21, 1945.

Judgment Affirmed June 13, 1945.

615

James B. Randolph and William Bruce Hoff, both of Parkersburg, W. Va., for plaintiff.

Oscar J. Andre, of Clarksburg, W. Va., and Robert B. McDougle, of Parkersburg, W. Va. (Steptoe & Johnson, of Clarksburg, W. Va., on the brief), for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff was painfully injured when she slipped upon a foreign substance on the floor and fell as she was leaving defendant's store at Parkersburg, West Virginia, on May 8, 1944. She is fifty-five years of age and employed at the office of the Collector of Internal Revenue. She fractured a ligament in her left foot causing her to lose two months from work. For six weeks her leg from the knee down was in a plaster paris cast. The jury awarded her $750, a very conservative amount of damages, considering the injuries sus

tained. Defendant has moved to set aside the verdict upon the following grounds: (1) Plaintiff has failed to prove actionable negligence on the part of defendant; (2) Plaintiff was guilty of contributory negligence, as a matter of law. In addition to rendering a general verdict, the jury specifically answered interrogatories favorable to plaintiff on both questions. In my opinion the case was properly submitted to the jury and the motion should be overruled.

There is practically no dispute as to the facts. Where there is conflict in the evidence, for the purpose of deciding this motion, we must consider plaintiff's evidence in its most favorable light. Plaintiff went to defendant's retail store accompanied by her daughter, Mrs. Ralph Shaver, to purchase a blouse. Defendant's store is located on Market Street in Parkersburg, West Virginia. There are three entrances to the store from Market Street. The fall occurred at the middle entrance about 12:20 P. M. This entrance door is indented so that the front of the store, which is made up of large store windows, projects several feet beyond the entrance to the line of the sidewalk, forming a vestibule. In other words, the door is located some four or five feet back of the line of the sidewalk. The floor of the store ends at the door, and the outside of the entrance begins there, the two being flush, without any step or offset, with a small metal strip or door sill where they join. The entrance or vestibule slopes slightly from the door to the street. At the time of the accident the weather was warm and the doors of the store were open. Plaintiff and her daughter entered the store by a door other than that where the fall occurred. They went directly to the rear of the store to the blouse counter. After being there a few minutes they came out together through the middle entrance. Just inside the metal strip plaintiff stepped on a slippery substance and fell into the vestibule space between the door sill and the edge of the sidewalk. Following her fall there was about a teaspoonful of a whitish creamy substance on plaintiff's shoe and a white streak of the same substance on the floor, beginning about an inch inside the doorway and extending about a foot outside the doorway. It looked like substance found inside what is commonly called an ice cream sucker. Neither plaintiff nor her daughter saw the substance prior to the fall. As plaintiff

was leaving the store she noticed a large group of school children assembled in the front of the store getting their lunch at two "stand-up" bars located on either side of this middle entrance where hamburgers, hot dogs, ice cream and different kinds of ice cream novelties are sold. She did not notice anything unusual on the floor as she was leaving the store. At the time she slipped she did not have her head down looking at the floor but was looking ahead into the store window. She had been in the store before and was familiar with this particular entrance. She had been talking to her daughter, but as they approached the door where the children were assembled, her daughter dropped behind her. Plaintiff had been in the store once within a week before her accident at the noon hour, but did not notice any trash on the floor. She denies any previous knowledge of dirty floors. Had plaintiff had her head down looking at the floor at this particular moment she could have seen the foreign substance upon which she fell.. Defendant denied that the accident happened in its store, but the jury found to the contrary. Plaintiff's evidence is so clear and convincing on this point that no discussion is necessary.

There are a number of public schools within a short distance from defendant's store. Each school day from 400 to 450 of these school children crowd around these two stand-up bars within a few feet from the middle entrance to get their lunch between 11:45 A. M. and 12:35 P. M. Standing three and four deep at the counter, the children hand their money from one to another and get their sandwiches or ice cream. Each hot dog or hamburger sandwich is served in a paper napkin. These napkins get very greasy and become soiled with relish, or other dressing served with the sandwiches. Ice cream suckers, candy imps and other ice cream novelties are wrapped in paper. Ice cream adheres to the paper when removed. All of this paper is thrown on the floor. There are no tables or chairs where the children might sit. Instead of depositing the dirty wet paper and food which is not eaten on tables or counters, the children, of necessity, must and do throw it on the floor in front of these bars located at the middle entrance. Not a single waste basket or other container of any kind is provided anywhere into which the children might throw this trash. They can either throw it into the street or throw it on the floor

near this middle entrance and most of them do the latter. The children play and push each other about and in their scuffles drop much food on the floor. On a previous day it was necessary for one witness to pick up her child and carry it through this accumulated trash in going in and out the store. According to the janitor about three gallons of this trash accumulated each lunch hour. There are no signs posted instructing the children as to their behavior or as to what they should do with this trash or the portion of their food which they do not eat. There is no one patrolling the store to tell the children what to do or to assist in cleaning up dangerous slippery conditions unknown to other customers while the children are in the store. No signs giving warning to customers of this dangerous condition were posted and there is no evidence that any employe of the store made any effort to warn other customers of these conditions. There is one janitor on duty in the daytime, but he takes his lunch from twelve to one o'clock and is not there while the children are in the store. The store manager takes his lunch at the same time. The manager of the store admits that these conditions existed each school day for a long time prior to the time plaintiff was injured. The store manager's description of conditions permitted at the store confirms the testimony of plaintiff's witnesses. He says that the floor of the store near this middle entrance at noon hour was customarily covered with relish, hamburgers, hot dogs and dirty paper and napkins. He admits knowledge of these occurrences and conditions and does not claim to have given any warning to customers or to have tried to direct other customers around the trash which the store manager knew was accumulating on the floor daily. No special action to remedy such conditions was taken, other than regular routine store regulations. The store is swept three times a day, at one and three o'clock and again at night after closing hours. Between sweeping hours when something unusual is spilled on the floor, word is relayed by the clerks to the janitor who is supposed to come and clean it up. This measure in no way helped to remedy these conditions because the janitor was not there to answer such calls. He took his lunch at the particular hour when his services were most needed. Nothing at all was done by defendant to collect any of the buns, hamburgers, hot dogs or

other food thrown on the floor, or to clean up grease, dirt and trash resulting therefrom until after the janitor returned from lunch at one o'clock. These conditions existed on the day plaintiff was injured. No one knows which of these children dropped this particular substance upon the floor or how long it had been there before the fall. Defendant says that under these circumstances, it had no knowledge that this particular substance was on the floor and in the absence of such knowledge there can be no recovery.

A customer who enters a retail store at the actual or implied request of the storekeeper for the purpose of making purchases is an invitee of such storekeeper and to such customer the storekeeper owes the duty to exercise ordinary care to look out for the safety of such customers while in the store to make purchases, including a duty to use ordinary care to see that the aisles and entrances are maintained and kept in a reasonably safe condition for ordinary use of customers. The mere presence of a foreign substance on the floor does not in itself show negligence, for this condition may temporarily arise in any store of this character, though the storekeeper has exercised due care; and if it appears that proper efforts are made to keep clean the aisles and entrances so they may be safely traversed, the storekeeper is not to be held responsible if someone accidentally slips and falls. Reynolds v. W. T. Grant Co., 117 W.Va. 615, 186 S.E. 603. As a general rule where a storekeeper uses reasonable care to keep its floors clean, and does not itself cause trash to accumulate, and some foreign substance is dropped by a customer as a mere chance occurrence, the storekeeper is not responsible for injuries sustained thereby until it knows or by the exercise of reasonable care should have known that such substance was on the floor and failed to remove it. The storekeeper is not as a general rule bound to anticipate an independent and unexpected act of negligence by a third party in depositing such objects on the floor. A storekeeper is not an insurer of the safety of persons who enter his store, even though he has invited them to enter. The true basis of liability is his superior knowledge of the dangerous conditions and his failure to give warning of the risk. If the dropping of the substance by a customer is an isolated, unexpected happening, the store-

keeper does not have the necessary knowledge and can not be liable until knowledge, actual or constructive, has been shown. Constructive knowledge is shown where the foreign substance has remained on the floor long enough to charge the storekeeper with such knowledge.

But where the act of the third person might reasonably have been anticipated by the storekeeper, it will not be considered an independent intervening act. 100 A.L.R. 718; Greenley v. Miller's, 1930, 111 Conn. 584, 150 A. 500 (crowd); Eyerly v. Baker, 1935, 168 Md. 599, 178 A. 691 (elevator; judgment for plaintiff reversed on other grounds); O'Bauer v. Katz Drug Co., 1932, Mo.App., 49 S.W.2d 1065, infra, III. (aisles; crowd); Richter v. L. Bamberger & Co., 1933, 11 N.J.Misc. 229, 165 A. 289 (escalator) infra, III.; Stanley v. F. W. Woolworth Co., 1934, 153 Misc. 665, 275 N.Y.S. 804 (falling window). See the case of Randolph v. Great Atlantic & Pacific Tea Co., D.C., 2 F.Supp. 462, 464, wherein the court said: "Storekeepers who maintain unsafe floors for the use of their customers during business hours each day should be held liable to persons injured by their acts, although such floors were made safe by cleaning, or otherwise, each night." See also the opinion of the Circuit Court of Appeals, 3 Cir., 64 F.2d 247, wherein District Court was affirmed in language very appropriate to the facts and contentions of this case. See also Markman v. Fred P. Bell Stores Co., 285 Pa. 378, 132 A. 178, 43 A.L.R. 862.

Under the evidence in this case the jury was justified in finding that the foreign substance was dropped by one of these school children; that the dropping of such substance was not a mere chance occurrence, or an isolated unexpected happening, but was the usual, continuous and foreseen result, incident to the manner in which defendant was serving the school children and conducting its lunch business. The jury was justified in finding that the unsafe conditions which defendant permitted to exist on May 8, 1944, was so common, continuous and so protracted that the dropping of the substance upon which plaintiff fell might reasonably have been anticipated by the storekeeper; and that defendant was negligent in permitting such dangerous and unsafe condition to continue. Under the facts cited above it borders on the ridiculous for defendant to say that it had no knowledge of the unsafe

condition which resulted in plaintiff's injuries, or that it did not know that this particular foreign matter was on the floor.

Defendant urges that wastebaskets in the front of the store would have done no good; that the children would throw this trash on the floor just the same; that they would have paid no attention to any signs or any amount of instructions or any type of regulation; that it would be impracticable to try to sweep or clean the floor while they were in the store; that the children had to be fed and that they proceeded to feed them as best they could. The jury evidently concluded that these unsafe conditions were not a necessary incident to defendant's business.

But assuming that the unsafe conditions were necessary, the defendant would still have a duty to warn its customers of such unsafe condition and this it did not do. It is no defense to this action that the negligence of a third person has intervened. The negligence of a third person as an "intervening efficient cause" can be relied upon as a defense only where it is the sole cause of the injury, and not when it concurs with that of the defendant. Conowingo Power Co. v. State of Maryland, etc., 4 Cir., 120 F.2d 870. Intervention of a subsequent tortfeasor does not absolve first, where second wrong and its consequences are fairly foreseeable from start. Whether the act of the third person in dropping the substance on the floor might reasonably have been anticipated by defendant was submitted to the jury. There is an abundance of evidence upon which the jury was justified in finding against the defendant on this issue. In fact the evidence is so strong as to justify the jury in finding that the manner in which defendant conducted its business actually created and caused the unsafe condition which resulted in plaintiff's injury.

In my opinion the question of contributory negligence was a jury question. A customer in a retail store who is upon the premises at the actual or implied request of the storekeeper for the purpose of making purchases has the right to assume that such storekeeper has discharged his duty in the exercise of reasonable and ordinary care, to keep the premises, including the aisles and entrances, in a reasonably safe condition for travel. He is not required to look constantly at the floor of such aisles and entrances in an effort to discover and avoid slipping upon foreign substances. Such customer has a right to rely upon this assumption until facts or circumstances are brought to his attention requiring him to pursue a contrary course. However, a customer can not walk blindly out of a store irrespective of obvious danger. He is bound to exercise ordinary care and prudence for his own safety. The courts have quite generally held that what constitutes ordinary care on the part of a customer with reference to observing objects on the floor while walking in a store in a question of fact for the jury. This is true because no general rule can be laid down as to how often a customer should look down at the floor in view of the presumption that the storekeeper has exercised reasonable care to keep the floors clean. What constitutes due care on the part of the customer depends upon the circumstances of each particular case. What an ordinary person would do under the same or similar circumstances is generally for jury determination. There is a substantial difference between the position of a pedestrian in a street and a customer in a store. The customer, in pursuit of an invitation by the storekeeper, passes along aisles between counters, and through entrances flanked by colorful display windows, where merchandise is displayed by the storekeeper to attract and hold the attention of the customers. Should the customer's attention be attracted by these pretty displays, to the exclusion of an exacting observation of the condition of the floor, the courts should be and are reluctant to hold him guilty of contributory negligence as a matter of law. As between the storekeeper who purposely created the attraction and the customer, the latter is favored. Glenn v. W. T. Grant Co., 129 Neb. 173, 260 N.W. 811; Ralston v. Merritt, 117 Pa.Super. 487, 178 A. 159; 100 A.L.R. 718.

At the moment plaintiff fell she was looking ahead into a display window, with her attention momentarily centered upon merchandise displayed by the defendant to attract her attention. She did not see the substance on the floor which she had no reason to expect to be there. The object was small, and while she could have seen it by looking down, it was not so large and conspicuous as to specifically attract her attention. The evidence is not clear as to just how much other foreign substance was on the floor and its loca-

tion with reference to plaintiff's course of travel in leaving the store. There were many school children crowded around the front part of the store, which would tend to obstruct her view of the floor. On the day in question plaintiff entered the store at a different entrance and was not in the front part of the store again until she was leaving. She had been in the store before at the noon hour once within a week prior to the accident. It does not appear that she went through this middle entrance on any previous occasion, or that she had ever before been in the vicinity of these stand-up bars during the lunch hour on school days. It is true that other witnesses who testified for plaintiff had previously observed these conditions, but these witnesses were those who had previously frequented the store far more than plaintiff. The store is not a small one, but has about one hundred employes. Under all the circumstances it would seem that what an ordinary person would have done under the same or similar circumstances is a question of fact for the jury. Denton v. Third Avenue Theatre Co., W.Va., 29 S.E.2d 353. That question has been specifically answered by the jury and such finding should not be disturbed. The motion to set aside the verdict is overruled.