HENRY J. KONOPKA

*v.*

MONTGOMERY WARD AND COMPANY

(No. 10152)

Submitted January 31, 1950. Decided March 7, 1950.

*William E. Glasscock,* for plaintiff in error.

*William Corbly Lemley, Kermit R. Mason,* for defendant in error.

RILEY, JUDGE:

Henry J. Konopka instituted this action of trespass on the case in the Circuit Court of Monongalia County against Montgomery Ward and Company, to recover damages for personal injuries alleged to have been sustained by him in a fall in defendant's mercantile store at Morgantown in Monongalia County. To a judgment entered on a jury verdict in plaintiff's favor, for ten thousand dollars, defendant prosecutes this writ of error.

The amended declaration upon which the trial was had, alleges that on June 15, 1946, the day plaintiff was injured, the defendant occupied a certain three-story building, located at the corner of High Street and Court Alley in the City of Morgantown, used as a mercantile store build-

ing; that the building was open to the plaintiff and all persons desiring to enter as prospective purchasers of merchandise offered and exposed for sale at retail by defendant; that in conjunction with its store, the defendant conducted and maintained an automobile parking lot, immediately adjacent to the building, for the use of its customers, and all other persons desiring to use the same in going to and from defendant's store, which lot was from time to time covered with pebbles of shale and limestone; and that defendant had an entrance leading from the parking lot to the ground floor of its building, and thence to a stairway, sometimes referred to in the record as the "back stairs," which led to the floor below the ground floor and the floors above.

The amended declaration also alleges that it was the duty of the defendant to keep the stairway in safe condition, but in dereliction thereof the defendant allowed and permitted pebbles of shale and limestone to accumulate thereon, particularly on the treads of the stairway leading to the upper floors from the rear entrance to the ground floor adjoining the parking lot; and that the stairway was improperly lighted, thereby rendering it dangerous and hazardous for the use of plaintiff and others.

The amended declaration alleges that the plaintiff, a prospective customer, on June 15, 1946, went to defendant's store and, not knowing, or having any way of knowing, of defendant's negligence in knowingly allowing and permitting pebbles of shale and limestone to accumulate on the treads of the stairway; and not knowing that the stairway was not properly equipped with lighting, so that as a result of defendant's negligence in permitting pebbles to accumulate on the stairway and in maintaining insufficient lighting conditions, plaintiff himself using reasonable care for his own safety, in attempting to go down the rear stairway, stepped on some pebbles of shale and limestone and fell down the steps, causing severe, painful, and permanent injuries, and also great bodily pain, mental anguish and nervous and physical disorders which will continue

throughout his life; and also by reason thereof plaintiff has been deprived of earnings in the amount of twenty-five hundred dollars, will be deprived of future earnings, and has been required to pay an aggregate of one thousand dollars in his endeavor to be healed.

From the allegations of the declaration it may readily be seen that plaintiff proceeded in the trial of this case on a two-fold theory: (1) That defendant was negligent in knowingly permitting a foreign or extraneous substance to accumulate on the back stairway of the store building; and (2) in negligently permitting the stairway to be improperly lighted and that, as a result of both conditions, the stairway became a hazard to plaintiff.

About 4:45 o'clock in the afternoon of the day plaintiff was injured, he parked his car in defendant's parking lot, walked down Court Alley and entered the defendant's store through the front entrance, and proceeded to the third or furniture floor, where he inquired of a clerk where he could purchase work trousers, and was directed to take the back stairway to the basement. As he proceeded down the back stairway from the furniture floor to the next or mezzanine floor, he stepped on some foreign substance, causing his feet to go out from under him so that he fell and slid down twelve or fifteen steps on his back, until he came to a stop at the landing on the mezzanine floor. He was rendered semi-conscious by the fall, but, having been revived at least partially, he was later taken by two of defendant's employees across the street to the office of a Dr. Johnson for medical attention, from where he was taken to a Dr. Pickett's office, and there he was given first aid and then sent to a hospital. Immediately after plaintiff fell, employees of the store found twelve small pebbles on the treads of the stairway at the approximate place where plaintiff slipped and fell.

In the main the evidence contained in this record establishes a dangerous condition of the stairway by reason of the presence of extraneous or foreign materials on the treads, consisting of pebbles of shale and limestone, and

conflicts on two factual questions: (1) Whether the lighting on the stairs at the place plaintiff fell was sufficient; and (2) whether defendant knew, or should have known, that the stairway was dangerous for use by plaintiff and others by reason of the presence of a foreign substance thereon, coupled with the allegedly insufficient lighting.

As the verdict of the jury was in plaintiff's favor, and the trial court refused to direct a verdict in favor of defendant, we are required in the consideration of this case to apply the rule stated in *Fielder, Admx.* v. *Service Cab Co.,* 122 W. Va. 522, pt. 1 syl., 11 S. E. 2d 115, that: "Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true which the jury may properly find under the evidence."

With the foregoing rule in mind, we must take as true the testimony of plaintiff's witness, Samuel S. Phillips, which bears materially on the question whether the verdict should be set aside because of insufficient evidence. Phillips testified that he was employed as a stock boy by defendant at its Morgantown store from May 14, 1946, until and after June 15, 1946, the day on which plaintiff was injured; that his duty as stock boy consisted of bringing merchandise by elevator into the stockroom, where it would be priced and then taken to the different departments of the store. He was wont to use the rear stairway when the elevator was in use, and "quite frequently" went up and down the back stairway. He further testified that the parking lot was "coated" with limestone shale and gravel; that on damp days he had seen gravel on the "back stairs"; that he had "seen it tracked in from the platform, I mean from the landing into the basement * * *. But I have seen it scattered off shoe soles going up the other steps"; that on June 15, 1946, the very day plaintiff was injured, witness had seen gravel on the back stairway up to the furniture floor; that during the period of witness' employ-

ment, to and including June 15, 1946, he had seen gravel on the rear stairway "as high as two or three times a week." On cross examination Phillips testified, "Yes, I have seen it [gravel] from the mezzanine floor up to the furniture floor, on that particular day."

Phillips further testified that about four or four-fifteen o'clock on said June 15, he was coming down in the elevator from the mezzanine floor, and had just opened the elevator door when he heard a woman's voice call, "Someone fell out there"; and heard plaintiff "back there hollering"; and that he heard a "thump out there, and a rumble, like somebody fell on the steps." Thereafter, Phillips went to the place where plaintiff had fallen, and found him sitting on the first step above the landing on the mezzanine floor, with his feet on the mezzanine landing. This witness further testified that, "They had fair lighting over there, but it could have been a lot better on a damp day"; and there is substantial evidence in this record that June 15 was a dark, damp day. This witness testified that the lighting on June 15 was only about forty per cent as strong as it was a short time before the trial.

Phillips' testimony is corroborated by other witnesses for plaintiff in essential details. I. J. Morgan testified he had seen gravel "some was like they have in the parking lot in the rear" on the stairway; and that he himself had stepped on "that shale they have in the back there, I presume, and things like that" and had fallen down the back stairway. He testified that the rear stairway "was rather dingy and dark," and that the lighting there "is better at the present time, * * * than it was in 1946." Pete Thomas Palumbo testified to the effect that in 1946 he visited defendant's store approximately fifteen or twenty times, and that he had used the back stairway on most of those visits. He testified that he had seen limestone gravel on the stairway from the mezzanine floor up to the furniture floor.

Plaintiff testified that on the afternoon he was injured, he parked his car at defendant's parking lot, which was

covered with limestone gravel, and, proceeding down Court Alley to the Spruce Street entrance of defendant's building, he entered the building, went upstairs to the furniture floor, inquired of a clerk there where he could find some work clothes, and was directed to go down the back stairway to the basement; that after he reached the landing between the furniture and mezzanine floors, he "stepped on this gravel, and my feet went—oh, well, I guess anyone knows if they step on anything like that on concrete, it was just like stepping on marbles; my feet went out from under me like that, and I * * * landed my full weight down on these concrete steps," and slid down the stairway until he reached the next, or mezzanine landing. He testified that he did not see any gravel or foreign substance on the tread of the stairs, but that he stepped on the foreign substance near the top of the landing, that is, the landing between the two floors. He further testified that on the day he entered the store, there was a "dreary, drizzling rain, and sort of a dreary day, a wet, damp day"; and further that if he had seen the foreign matter, he would not have fallen.

The extent of plaintiff's injuries and his pain and suffering are not controverted in this record. Of fifteen hundred steam plumbers engaged on the Morgantown ordnance plant only he and one other workman could do the work at high places, for which he received about one hundred fifty dollars a week; and plaintiff testified that after his injury he was able to do only light work at a comparatively small wage.

Evidence was adduced on behalf of defendant to the effect that the stairway was well lighted by a one hundred-watt electric lamp and a window at each landing, in much the same manner as it was lighted at the time of the trial.

Twelve limestone pebbles were taken from the steps by defendant's representative immediately after plaintiff fell, and were sent to defendant's main office in Chicago, but they were not returned nor were they offered in evidence at the trial.

Defendant introduced evidence to the effect that its janitor swept the main floor twice a day and the back stairway once a day; and defendant's janitor testified that he had swept the steps between two and three o'clock in the afternoon of June 15, 1946. Glenn D. Maxon, one of defendant's trainees, testified that there were standard company-prescribed signs on the stairway between the mezzanine and the furniture floors, warning defendant's customers to use care; that his duties during the course of his employment, which extended for some time after plaintiff was injured, took him to all parts of the store, and particularly to the rear stairway thereof. This witness testified that he did not "recall" seeing any pebbles, gravel, or limestone particles on the rear stairway between the mezzanine and the furniture floors, but evidently his observance before plaintiff was injured was merely cursory, because he testified that he "made a special note in my mind to attempt to find some, after the occasion of this particular accident."

This case differs from the cases of *Cooper* v. *Prichard Motor Co.*, 128 W. Va. 312, 36 S. E. 2d 405; *Gilmore* v. *Montgomery Ward & Co.*, 133 W. Va. 342, 56 S. E. 2d, 105; *Coates* v. *Montgomery Ward & Co.*, 133 W. Va. 455, 57 S. E. 2d 265, in which the gravamen of plaintiffs' complaints was that the premises of defendants are of themselves unsafe and hazardous; and should be likened to *Hunker* v. *Warner Bros. Theaters,* 115 W. Va. 641, 177 S. E. 629; and *Denton* v. *Third Avenue Theater Co.*, 126 W. Va. 607, 29 S. E. 2d 353, each of which involved a foreign substance on the defendant's premises. In a discussion in the *Gilmore* case of the two last-mentioned cases, we find the following: "In such cases, the Court is primarily concerned, not with the actual condition of the premises, causing the injury, but with whether the defendant had a reasonable opportunity to know, or did know, that the premises, which ordinarily were reasonably safe, had been thus rendered unsafe." In the *Denton* case, plaintiff claimed that she stepped on or tripped over a foreign object lying on the floor in the row of seats in which she

was sitting, and between her and the aisle in defendant's theater; that shortly before she fell one of the ushers in the theater came down the aisle, talked to a man and woman seated in the row of seats with plaintiff, and then, with a lighted flashlight in his hand, "leaned over and acted as if he were picking up something." On this state of facts this Court held that, there being no evidence from the time plaintiff and her children were seated in the theater until they started to leave that other patrons of the theater, except the couple to whom the usher had spoken, had entered the row in which plaintiff was sitting, it was for the jury to say whether defendant knew, or by the exercise of ordinary care should have known, of the presence of the foreign substance, and whether it might cause injuries to one of its patrons. For this reason this Court affirmed a verdict in plaintiff's favor.

As heretofore stated, the evidence in the instant case is uncontradicted to the effect that there was, in fact, at the time plaintiff was injured, a foreign substance on the back stairway, which was likely to, and did, cause plaintiff's injuries. But whether defendant knew, or should have known, of the presence of such foreign substance presents an entirely different question, a question which is typical of all cases in which a foreign substance is alleged to have caused a plaintiff's injuries, rather than an inherent defect in the premises themselves. Whether the defendant knew, or by the exercise of reasonable care, should have known, of the presence of the foreign substance on the stairway which caused plaintiff's injuries, coupled with evidence bearing on whether the stairway was properly lighted, is, in our opinion, a jury question. We say this because under the rule in the *Fielder* case, the testimony of plaintiff's witnesses, Phillips, Morgan, and Palumbo, that on numerous occasions there were foreign substances, such as pebbles, on the treads of the stairway, must be taken as true, and it was for the jury to say, notwithstanding defendant's denial of knowledge, that the defendant either knew, or should have known, that the loose gravel was wont on wet day to stick to the

shoes of persons who came from the parking lot and proceeded up or down the back stairway. Likewise it was for the jury to solve the conflict in the evidence presented by this record on the question whether the lights were sufficient to render the stairway safe for use by defendant's customers, including plaintiff.

As to the sufficiency of the lights, the question is whether they were, in fact, so insufficient as to create a hazard; and not whether defendant knew, or should have known, thereof. In this regard the rule in the *Cooper, Gilmore* and *Coates* cases is applicable. We think this case on the question of lighting is fully governed by the case of *O'Flaherty* v. *Tarrou,* 130 W. Va. 326, 43 S. E. 2d 392, which involved a foreign substance on defendant's premises, with knowledge of which, under the facts in that case, defendant was not chargeable. In that case, as here, there was a plain conflict in the evidence as to the lighting conditions at the time defendant was injured. This Court there held that the uncontradicted evidence, tending to show that plaintiff was caused to fall on the foreign substance, for the presence of which defendant would not be responsible, "coupled with the plain conflict of the evidence as to the lighting conditions at the time plaintiff was injured, renders the case one for jury determination." In view of the plain conflict in the evidence as to the lighting conditions in defendant's back stairway at the time plaintiff was injured, and the uncontradicted evidence that there was an extraneous or foreign substance, consisting of pebbles of limestone and shale, on the stairway between the mezzanine and furniture floors, we are of opinion that the jury had the right to find, as it did, that the stairway was in a dangerous and hazardous condition, which proximately resulted in plaintiff's injury; and we are further of the opinion that it was for the jury to say whether defendant knew, or should have known, of such condition.

The defendant assigns error to the trial court's ruling in permitting plaintiff to amend his declaration during the course of the trial, changing the allegation in the declara-

tion that plaintiff had expended one thousand dollars for medical bills to twenty-five hundred dollars, and, after the amendment, refusing defendant's motion for a continuance. This amendment was made in order to conform to plaintiff's testimony theretofore given that he expended "in medical bills and braces, I figure, around approximately $2,500.00." Code, 56-4-24, provides that notwithstanding a defendant's appearance, the trial court, "if in its opinion satisfactory justice will be promoted thereby, may, at any time before final judgment * * *, and upon such terms as it may deem just, permit any pleading to be amended * * *." Under this section of the Code, the trial court has a wide discretion in the matter of amendments to a declaration or other pleading after defendant's appearance and before final judgment or decree. *Shrimplin* v. *Simmons Auto Co.*, 122 W. Va. 248, 251, 9 S. E. 2d 49. In the recent case of *Larzo* v. *Swift & Company*, 129 W. Va. 436, 40 S. E. 2d 811, in which the parties stipulated among other things, that plaintiff's son had paid the sum of two hundred twenty-five dollars for repairs to plaintiff's automobile, plaintiff was permitted during the trial to amend the declaration to the effect that the automobile owned by her was damaged to the extent of three hundred fifty dollars on account of defendant's alleged negligence. In that case this Court held that the trial court was not called upon to place plaintiff on terms in permitting the amendment. Under the holding in the *Larzo* case, the trial court in the instant case committed no error in permitting the amendment and refusing the continuance, but because this case must be retried, the trial court's action in refusing the continuance necessarily is moot.

Error is also assigned to defendant's failure to prove that the medical services allegedly rendered were necessary and the charges therefor reasonable. In *Landau* v. *Farr*, 104 W. Va. 445, 140 S. E. 141, it was held that "The measure of recovery under this head is not necessarily the amount paid for medical attendance, but the reasonableness of the charges must be established. The reasonable charges intended are the reasonable charges of the

profession generally and not the usual charges of a physician or surgeon." It is contended by counsel for plaintiff that counsel for defendant invited error by his objection to the evidence. Plaintiff testified, as heretofore stated, that he paid out "in medical bills and braces, I figure, around approximately $2,500.00." Then plaintiff was asked by his counsel, "Now, I will get you to state who you paid these sums to, and approximately how much to each one," to which question counsel for defendant objected, and the trial court sustained the objection. In our opinion, the trial court erroneously sustained that objection, but it then and there became the duty of counsel for plaintiff, notwithstanding the trial court's ruling on defendant's objection, to have vouched the record, showing that the medical expenses in the amount of twenty-five hundred dollars were, in fact, necessary and reasonable, and their failure to do so, in our opinion, constitutes reversible error and merits a new trial.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Monongalia County, set aside the verdict, and award a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*